## WALKER *v.* WHITEHEAD.

1. The laws which exist at the time of the making a contract, and in the place where it is made and to be performed, enter into and make part of it. This embraces those laws alike which affect its validity, construction, discharge, and enforcement. The remedy or means of enforcing a contract is a part of that "obligation" of a contract which the Constitution protects against being impaired by any law passed by a State.
2. *Held,* accordingly, when, on the 1st of January, 1870, suit was brought on a promissory note given in March, 1864, payable in March, 1865, that

a law passed in October, 1870, which enacted (by one section) that in all suits pending on any contract made before June 1st, 1865, it should not be lawful for the plaintiff to have a verdict unless he made it appear that all taxes chargeable by law on the same had " been *duly paid for each year* since the making of the same;" and enacted (by another section) that it should be a condition precedent to such recovery that " the said debt has been *regularly* given in for taxes and the taxes paid," and (by other sections) made other retrospective enactments,—impaired the obligation of a contract, and was accordingly unconstitutional.

IN error to the Supreme Court of the State of Georgia.

*Mr. P. Phillips, for the plaintiff in error ; no opposing counsel.*

Mr. Justice SWAYNE stated the case, and delivered the opinion of the court.

The case, as it appears in the record, is as follows : On the 1st of January, 1870, the plaintiff in error instituted this suit against the defendant in error upon a promissory note, made by the latter to the former, dated March 28th, 1864, for $7219.47, payable on the 19th of March then next ensuing. The defendant interposed two pleas :

1st. That after the maturity of the note he had tendered payment in Confederate treasury notes.

2d. That he was a loser by the result of the late war against the United States of one hundred negroes worth $50,000, and of Confederate securities of the value of $20,000; that he was a citizen of the Confederate States who waged and carried on that war, and that he pleads those losses as an offset to the demand of the plaintiff to the amount of the principal and interest of that demand.

When the case was called on the calendar the defendant moved the court to dismiss it, because the plaintiff had not filed an affidavit of the payment of the taxes upon the note as required by the act of the legislature of Georgia of the 13th of October, 1870. The plaintiff objected upon several grounds. The court overruled his objection, and dismissed the case. The plaintiff thereupon removed it to the Supreme Court of the State. That court affirmed the judgment of the court below.

The first and second sections of the act referred to are as follows:

"SECTION 1. That in all suits pending, or hereafter brought, in or before any court of the State, founded upon any debt or contract or cause of action made or implied before the 1st June, 1865, or upon any other debt or contract in renewal thereof, it shall not be lawful for the plaintiff to have a verdict or judgment in his favor, unless he has made it clearly to appear before the tribunal trying the same that all legal taxes chargeable by law upon the same *have been duly paid for each year* since the making or implying of said debt or contract.

"SECTION 2. In any suit now pending, or hereafter brought, it shall be the duty of the plaintiff, within six months after the passage of this act, if the suit be pending, and at the filing of the writ, if the suit be hereafter brought, to file with the clerk of the court of justice an affidavit, if the suit was founded on any debt or contract as described in section one, that all legal charges chargeable by law upon such debt or contract *have been duly paid*, or the income thereon *for each year since the making of the same*, and that he expects to prove the same upon the trial; and, upon failure to file such affidavit as herein required, said suit shall, on motion, be dismissed."

The fourth section declares it to be a condition precedent to a recovery that "the said debt has been *regularly* given *in for taxes*, and the taxes paid."

The fifth section provides, in respect of judgments already rendered, that no levy or sale shall be made unless an affidavit be made that all taxes "have been duly paid from the time of making said contract to the time of attaching the affidavit."

The sixth section provides that in all cases of indebtedness of this class the defendant may offset "any losses he may have suffered by, or in consequence of, the late war against the United States," whether the said losses "be from the destruction or *depreciation* of property."

The seventh section declares that these damages shall not be considered as "too remote or speculative, if it appear that they were fairly and legitimately produced, *directly or indirectly, by said war or the results thereof.*"

The ninth section provides that these losses by the war may be offset against judgments already rendered.

The fourteenth section provides that, as to such debts due to widows and minors, they are to be settled "upon the principles of equity, *taking into consideration the relative loss of property sustained by the plaintiff and defendant.*"

The fifteenth section provides that the provisions of the fourteenth are not to apply where the defendant is in possession of the property, for the purchase of which the said contract was entered into, with this proviso: that "the defendant may elect to give up the property in his possession for which such contract was entered into, and such election shall be the full discharge of such indebtedness."

The contract here in question is within the predicate of this act. It was made more than six years before the act was passed. The act was retrospective—denounced a penalty not before prescribed for the non-payment of taxes— and, if such delinquency had existed for a single year, confiscated the debt by making any remedy to enforce payment impossible. The denunciation and the penalty came together. There was no warning and there could be no escape. The purpose of the act was plainly not to collect back taxes —that was neither asked nor permitted as a means of purgation—but to bar the debt and discharge the debtor.

The act is not an *ex post facto* law only because that phrase in its legal sense is confined to *crimes* and their punishment.

The Constitution of the United States declares that no State shall pass any "law impairing the obligation of contracts."

These propositions may be considered consequent axioms in our jurisprudence:

The laws which exist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it. This embraces alike those which affect its validity, construction, discharge, and enforcement;

Nothing is more material to the obligation of a contract than the means of its enforcement. The ideas of validity

and remedy are inseparable, and both are parts of the obligation which is guaranteed by the Constitution against impairment;

The obligation of a contract " is the law which binds the parties to perform their agreement;"

Any impairment of the obligation of a contract—the degree of impairment is immaterial—is within the prohibition of the Constitution;

The States may change the remedy, provided no substantial right secured by the contract is impaired. Whenever such a result is produced by the act in question, to that extent it is void. The States are no more permitted to impair the efficacy of a contract in this way than to attack its vitality in any other manner. Against all assaults coming from that quarter, whatever guise they may assume, the contract is shielded by the Constitution. It must be left with the same force and effect, including the substantial means of enforcement, which existed when it was made. The guarantee of the Constitution gives it protection to that extent.*

The effect of these propositions upon the judgment before us requires but a single remark. A clearer case of a law impairing the obligation of a contract, within the meaning of the Constitution, can hardly occur.

The judgment of the Supreme Court of Georgia is REVERSED, and the cause will be remanded to that court with directions to enter a judgment of reversal, and then to proceed

IN CONFORMITY TO THIS OPINION.

---

* Von Hoffman v. The City of Quincy, 4 Wallace, 535.