## Kennedy v. Kennedy.

(Decided February 20, 1923.)

### Appeal from Grant Circuit Court.

1. Limitation of Actions—Bills and Notes—Part Payment—Effect.—
In a case of a promissory note not placed on the footing of a bill
of exchange, the period of limitation is fifteen years, but a pay-
ment on the note is a sufficient acknowledgment of the debt to
stop the running of the statute up to that time, and the period of
limitation will then be computed from the date of the payment.

2. Limitation of Actions—Part Payment—Denial of Credits—Burden
of Proof.—When payments represented by credits on a note are
denied the burden is on the holder to show that the payments
were made at the time they purport to have been made, or at
least within fifteen years from the time the note became due.

3. Limitation of Actions—Part Payment—Effect.—Where the maker
and holder of certain notes agreed that half the sum which the
holder should receive in the settlement of a certain transaction
should be applied on the notes as a credit, and, pursuant to the
agreement, the money was applied and accepted as a payment,
there was sufficient acknowledgment of the debt to suspend the
running of the statute of limitations up to that time.

4. Limitation of Actions—Payment—Time.—Where, in order to
make payment on notes, the holder executed a new note to a
bank which was endorsed by the maker of the old notes, and
the proceeds placed to the credit of the holder in 1910, and the
note was afterwards paid off by the endorser in 1913, the payment
was made in 1910 when the proceeds were received.

5. Evidence—Documents—When Exhibits Not Part of Record.—In
an action on certain notes defended on the ground that the notes
had not been listed for taxation, plaintiff filed a reply admitting
the allegation, but pleading a subsequent listing and payment of
taxes, and filed therewith an attested copy of the assessment and
the sheriff's receipt for the taxes. The reply was controverted
of record, but the exhibits were not offered in evidence: Held,
in view of section 128, subsection 3, Civil Code, providing that
in an ordinary action such exhibits (those not required by sec-
tion 120 to be filed as the foundation of the action or defense)
shall not constitute a part of the record, unless it show that they
were used on the trial, there was no evidence to support the
averments of the reply, and a peremptory in favor of plaintiff
was improper.

6. Constitutional Law—Impairing Obligation of Contract—Statutes
—Validity.—Section 4019a-13, providing that a failure to list
any note or bond shall be a bar to any action upon same in any
court, and may be pleaded as a complete defense, but the holder
thereof may at any time pay all taxes, penalties and accrued in-
terest and thereupon be relieved of the defense, while applicable

to notes theretofore executed, applies only to a future listing, and when so construed, is not unconstitutional on the ground that it impairs the obligation of the contract, as it affords the holder an opportunity thereafter to list and pay at any time.

O. M. ROGERS and C. C. ADAMS for appellant.

D. E. CASTLEMAN and DICKERSON & DICKERSON for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

J. W. Kennedy and J. G. Kennedy are brothers. They had been engaged in buying and selling tobacco and each had sustained a large loss. To relieve his brother of his financial embarrassment, J. G. Kennedy loaned him $5,-000.00, which he raised by mortgaging his farm. On July 26, 1893, the indebtedness, with the accumulated interest, was merged into three notes, one for $3,000.00, payable one day after date, one for $2,950.00, payable sixty days after date, and both payable to the order of Annie Kennedy, the wife of J. G. Kennedy, and one for $1,000.00, payable twelve months after date to the order of Katie Kennedy, a daughter of J. G. Kennedy. Later on the notes were endorsed in blank by the payees and delivered to J. G. Kennedy. On the $3,000.00 note are the following endorsements:

"Received on within note eight hundred and fifty dollars this Nov. 3rd, 1898.

"Received on within note $200.00 credit derived from note given Union Bank Feb. 1910, said note paid by J. W. Kennedy Dec. 12-1923."

On the $2,950.00 note are the following endorsements:

"$850.00. Received on the within note eight hundred & fifty dollars, this Nov. 3rd, 1898.

"Received on the within note $200.00 credit derived from note given to Union Bank Feb. 1910, said note paid by J. W. Kennedy, Dec. 1913."

On the $1,000.00 note are the following endorsements:

"$300.00. Received on the within note three hundred dollars, this Nov. 3rd, 1898.

"Received on within note $100.00 credit derived from note given to Union Bank Feb. 1910, said note paid by J. W. Kennedy."

On January 28, 1920, J. G. Kennedy brought suit on the notes. The defense was a plea of limitation and a further plea that the action could not be maintained because the notes had never been listed for taxation. The

defendant declined to offer any evidence, and at the conclusion of the evidence for plaintiff, the court directed the jury to return a verdict in his favor. Defendant appeals.

In the case of a promissory note not placed on the footing of a bill of exchange, the period of limitation is fifteen years, but a payment on the note is a sufficient acknowledgement of the debt to stop the running of the statute up to that time, and the period of limitation will then be computed from the date of the payment. Brown's Admr. v. Osborne, 136 Ky. 456, 124 S. W. 405. However, if, as in this case, the payments represented by the credits are denied, the burden is on the holder of the note to show that the payments were made at the time they purport to have been made, or at least within fifteen years from the time the note became due. Tate v. Hawkins, 81 Ky. 577.

Respecting the credits of November 3, 1898, appellee testified as follows:

"Q. I say there was endorsed on this note, 'Received on within note, November 3, $850.00.' That is November 3, 1898, and also on the other $3,000.00 and on the $1,000.00 note $300.00 on that day. Now will you explain to the jury how you came to credit these notes with that amount? A. Well, it was through an understanding with me and him. I gave him credit of $2,000.00 on the three notes. Understand he knows all about it. Q. How did the $2,000.00 come about, explain it. A. It came this way. He always claimed in his settlement with Wayne—it has nothing to do with my settlement with Wayne—he always claimed that he did not get a fair settlement, Wayne did not treat him right. I told him I could not help that, what Wayne done to him. I said when I get my settlement through with Wayne—— (Defendant, by counsel, objects to the foregoing answer.) A. That is a credit that I gave him then, there is nothing crooked about it, he understands the whole business. Q. Now we were interrupted there so I don't think the jury heard you. Tell the jury as clearly as you can what the transaction was about by which you gave him credit for $2,000.00, explain it fully. A. It was just this—— Q. Tell what occurred between you and J. W. Kennedy. A. It was not concerning him at all. I just simply made him a present in settlement. Q. I am not asking you that. I am asking you about the transaction, tell me

that. A. I don't know what you mean. Q. That don't tell me about the transaction itself. A. There was an understanding that I give him credit. Q. What was the understanding? A. After I got off from Wayne with my settlement, why—— Q. You had an agreement with him about that? A. Yes, sir, he understood it and he understands it today. Q. Well, what did you get off of Wayne? A. $4,000.00. Q. Credited him? A. Credited him with half on them notes as a present. Q. Mr. Kennedy, where did you get this $2,000.00 that you credited on these notes in 1898? A. I got it from Wayne. Q. Why did you get it from him? A. Got it in settlement. Q. Do you mean to tell this jury you collected $2,000.00 belonging to your brother? A. I tell the jury and I will tell you that it was the understanding that if I got anything out of my individual settlement with Mr. Wayne, I would give him half of it, credit it on the notes and I done so. Q. Do you mean to tell this jury you gave him one-half of $4,000.00 that you collected that was coming to you as a credit on these notes? A. Yes, sir. Q. Was the money coming to your brother? A. Not until I agreed to give it to him. Q. It was simply a gift? A. Yes, sir. Q. In so far as the money itself was concerned, he had no interest in it till you gave it to him? A. No, sir. Q. But the $4,000.00—— A. I will—— Q. Wait a minute, please; $4.000.00 of this? A. Yes, sir. Q. You simply applied it as a credit, half of it on his notes? A. Yes, sir, just as I agreed to. Q. Was he entitled to any interest in the $4,000.00 at all? A. No, sir. Q. Never did have? A. Never did have.''

It is the contention of appellant that the foregoing evidence merely shows that appellee made appellant a present of half of the money that he received in the settlement with Wayne, and that the holder of a note cannot suspend the running of the statute of limitations by making the payor a present and crediting that present on the note. It seems to us, however, that the evidence considered as a whole goes further than is claimed by appellant. Appellee sums up the transaction in the following language:

''I tell the jury and I will tell you that it was the understanding that if I got anything out of my individual settlement with Mr. Wayne, I would give him half of it, credit it on the notes, and I done so.''

It is true that his evidence shows that he did not believe that appellant was entitled to any of the money so received, and in making the credit, he regarded it as a present, yet, as both parties agreed that half the sum so received should be applied as a credit on the notes, and, pursuant to that agreement, the money was applied and accepted as a payment, we think there was sufficient acknowledgment of the debt to suspend the running of the statute up to that time.

Taking up the credits of 1910, the facts disclosed by the evidence are as follows: Appellee was insisting that appellant pay something on the notes. Payment was made in the following way: In 1910 appellee executed a note to the Union Bank for $500.00. The note was endorsed by appellant, and the proceeds placed to the credit of appellee. The note was renewed from time to time, but finally was paid off by appellant in 1913. There can be no doubt, therefore, that the payment was made when appellee received the proceeds in 1910.

It will thus be seen that the notes were executed in 1893. The first payments thereon were made in 1898. The second payments were made in 1910 and suit was brought in 1920. Furthermore, there was evidence tending to show that appellant, from time to time, acknowledged the indebtedness represented by the notes and promised to pay them. The evidence being uncontradicted, we conclude that on the question of limitation the court did not err in directing the jury to find for appellee.

Section 4019a-13, Kentucky Statutes, provides:

"In addition to the penalties provided in the preceding section, failure to list any note or bond shall be a bar to any action upon the same in any court, and may be pleaded as a complete defense. But the holder thereof may at any time pay all taxes, penalties and accrued interest and thereupon be relieved from the defense above provided."

Relying on the foregoing statute, appellant filed an amended answer pleading in substance that appellee had never listed the notes for taxation, or paid the taxes thereon. Thereupon appellee filed a reply admitting that he had not listed the notes for taxation at the time the amended answer was filed, but pleading that since that time he had listed the notes and paid the taxes

thereon, and filed with the reply an attested copy of the assessment, and the sheriff's receipt for the taxes. Though the allegations of the reply were controverted of record, and the burden was on appellee to show that, since the filing of the amended answer, he had listed the notes and paid the taxes thereon, he failed to offer the exhibits in evidence. While subsection 1, section 128, Civil Code, provides that, in addition to the writings which a party is required by section 120 to file as the foundation of his action or defense, he may file as an exhibit with his pleading any writing upon which he may intend to rely as evidence, subsection 3 provides that in an ordinary action such exhibits shall not constitute a part of the record unless it show that they were used on the trial. As the exhibits in question were not required to be filed, and were not used on the trial, and for that reason are not a part of the record, it follows that there was no evidence to support the averments that the notes had been listed and the taxes paid thereon. That being true, it results that the peremptory was improper, unless appellee's contention that the statute is unconstitutional as applied to notes theretofore executed is sound, a question which we shall proceed to discuss.

It is insisted that, as to prior notes, the statute impairs the obligation of the contract by depriving the holders of a remedy which existed when the notes were executed, and was therefore a part of the contract. There might be some merit in this contention if the statute barred an action on a note that had not therefore been listed, and gave the holder no further opportunity to list and pay, Walker v. Whitehead, 16 Wall. 314, 21 U. S. (L. Ed.) 357, but such is not the effect of the statute. No rule is better settled than that statutes will not be given a retroactive operation unless such interpretation is required by express command or necessary and unavoidable implication, and especially is this true where such a construction would raise a serious doubt as to the constitutionality of the act when so applied. Cravens v. L. & N. R. R. Co., 195 Ky. 257, 242 S. W. 628; Murray v. Gibson, 15 How. 421, 14 L. Ed. 755; United States, ex rel. Atty. Gen. v. Delaware & H. Co., 213 U. S. 366, 408, 29 Sup. Ct. 527, 53 L. Ed. 836. Looking at the statute in the light of this rule, we conclude that, while it applies to notes theretofore executed, it does not apply to prior

listing, but only to future listing. It is a tax measure pure and simple. Its purpose is not to protect the defendant, but to enforce the collection of taxes by requiring the holder to perform a duty which he already owed to the state. It affords the holder an opportunity not only to list on the regular assessment days, but to list and pay at any time, and thus avoid the consequences of a prior failure to list, and when so construed, we conclude that the act is valid. Macon, etc. R. Co. v. Little, 45 Ga. 370; Taylor v. Burdett, 11 Leigh (Va.) 334.

Judgment reversed and cause remanded for new trial consistent with this opinion.