BARWISE et al., TRUSTEES, *v.* SHEPPARD, COMPTROLLER OF TEXAS, et al.

No. 10.   Argued October 13, 1936.—Decided November 9, 1936.

*Mr. William R. Watkins* for appellants.

*Mr. William McCraw,* Attorney General of Texas, with whom *Mr. H. Grady Chandler,* Assistant Attorney General, was on the brief, for appellees.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

A statute of the State of Texas imposing a tax on the production of oil is here challenged as violating the contract clause of the Constitution of the United States and the due process of law clause of the Fourteenth Amendment.

The appellants own lands from which oil is produced under a lease given in 1925. The lease is in the usual form of an oil lease; invests the lessee with the right to explore for and produce oil; shows that the production is to be for the mutual benefit of the lessor and lessee;

fixes the lessor's proportion, or royalty interest, at "the equal ⅛ part of all oil produced"; and requires the lessee to deliver that proportion to the lessor's credit, "free of cost, in the pipe line" to which the wells are connected.

When the lease was given and up to 1933 a law of the State imposed on the lessee alone, as the active producer, a tax on all oil produced,[1] and that tax was paid and borne by the lessee so long as that law remained in force.

By an act of 1933 [2] a substituted tax on oil production was imposed with an accompanying provision that the tax "shall be borne ratably by all interested parties including royalty interests" and with other provisions designed to secure prompt and certain payment of the full tax as by charging the active producer, or the purchaser of the oil where sold in the pipe line, with a primary duty to pay the full tax, and authorizing and requiring him to withhold from royalty or purchase money due interested parties the proportionate tax due from them.[3]

For about a year after the Act of 1933 became effective the purchaser of the oil produced under the lease paid the full tax and deducted the appellants' proportion from what was due to them on the purchase of their share of the oil. The payment of this part of the tax was accompanied by written protests of the appellants and the purchaser.

---

[1] Vernon's Ann. Tex. Stat., Art. 7071.

[2] Act 1933, Reg. Sess., c. 162, § 2, as amended by Act 1933, 1st Called Sess., c. 12.

[3] Section 2 (3) provides: "The purchaser of oil shall pay the tax on all oil purchased and deduct tax so paid from payment due producer or other interest holder. . . ."

And § 2 (6) further provides: "The tax herein levied shall be borne ratably by all interested parties, including royalty interests; and producers and/or purchasers of oil are hereby authorized and required to withhold from any payment due interested parties, the proportionate tax due."

The present suit was brought by the appellants against the Comptroller and Treasurer of the State to secure a refund of the taxes paid under protest and an injunction against the collection of further taxes in respect of appellants' interest in the production. In the court of first instance there was a decree for the defendants, which the Court of Civil Appeals affirmed after sustaining the taxing act against appellants' before mentioned challenge to its validity.[4] The Supreme Court of the State declined to take the case on writ of error, and an appeal to this Court was sought and allowed.

We come first to the contention that, as applied to the appellants, who are not actively engaged in the production of oil but are lessors having a royalty interest, the act is an arbitrary fiat, in contravention of fundamental principles of private right and distributive justice, and therefore denies to appellants the due process of law guaranteed by the Fourteenth Amendment.

The taxing act calls the tax an "occupation tax" and a "gross production tax." The Court of Civil Appeals applies to it both of these designations, and also characterizes it as a "tax levied on the business or occupation of producing oil." In discussing appellants' claim that they are not engaged in such a business or occupation and that the act nevertheless includes them among those on whom the tax is laid, the court expresses the view that, for the purposes of such a tax, "the legislature may validly declare the owners of royalty or other interests in the oil produced to be engaged in the occupation or business of producing oil." The designations applied to the tax and the view just noticed are stressed by counsel for the appellants and relied upon as supporting the contention that the taxing act is essentially an arbitrary fiat.

But when mere characterizations of the tax are put aside and attention is given to the substance of the court's

---

[4] 89 S. W. (2d) 1026.

opinions in this and a companion case,[5] it unmistakably appears that the court regarded the tax as an excise laid on the production of oil, measured by the extent of the production, and charged ratably against all who have an interest in the oil produced. True, the court speaks of the tax as laid on the "occupation or business" of producing oil, but its opinions plainly show that these terms are used in the sense of a "planned undertaking" or "mining venture" and as comprehending all who have a direct and beneficial interest in the oil being produced, whether they be owners conducting oil operations on their own lands, or lessees operating under leases from owners and sharing the oil with the latter, or owners who have leased their lands for oil operations and share the oil with the lessees. As illustrating the actual decision and the reasons underlying it we quote from the opinions:

"The legislative intent to levy the tax ratably against all interested parties in the oil produced is also clearly evidenced by the language that 'the purchaser of oil shall pay the tax on all oil purchased and deduct tax so paid from payment due producer or other interest holder,' and 'withhold from any payments due interested parties, the proportionate tax due.' These provisions do not levy the tax against the purchaser. He is merely made the agent of the State to collect from the producer or other interest holders the total amount of the tax due; and he is authorized to charge their respective accounts with 'the proportionate tax due.' That is, the purchaser withholds from the producer only as an interest holder and only to the extent of his interest. Likewise the purchaser withholds from other royalty or interest holders the amount of the tax due on their royalty or other interests. The Act, therefore, designates the parties against whom the tax is levied. The amount of the tax due by

---

[5] *Group No. 1 Oil Corp.* v. *Sheppard,* 89 S. W. (2d) 1021.

each is also defined or measured by the extent of interest in the oil produced, or the amount paid because it was produced."

.    .    .    .    .

"It is also manifest that the tax is not dependent upon the character of title under which the producer produces the oil. Nor is the tax levied on the oil in place. The tax is levied on the business or occupation of producing the oil."

.    .    .    .    .

"The ordinary form of oil lease has a dual character or purpose: (1) the conveyance of an estate in the land for development purposes; and (2) the future development and operation of the lease for oil in accordance with the terms, express and implied, of the contract for the mutual benefit of the parties, their respective benefit being measured by the extent of their interests in the oil produced, or its value. The law is settled that the primary objective or purpose of the oil lease is the production of oil for the mutual profit of the parties. The consideration moving to the lessor is an interest in the oil or its value in money. Thus he has a direct interest in the success of the business. As the holder of the royalty interest the lessor or royalty owner is not only entitled to share in the gross production of the oil, but may under the terms of the lease, expressed or implied, require proper, prudent and diligent management and development of the business, and has reserved and is entitled to both legal and equitable remedies necessary to enforce the obligations of the lease, and under some circumstances may forfeit the lease for nondevelopment."

.    .    .    .    .

And the court quoted the following from a decision of the Supreme Court of New Mexico:[6]

---

[6] *Flynn, Welch & Yates, Inc.* v. *State Tax Comm'n,* 38 N. M. 131; 28 P. (2d) 889, 892.

"Our minds do not reject the idea that the lessee and the royalty owner, considered as participating in a joint enterprise, are both engaged in the business of producing or severing oil, and that the tax is therefore essentially occupational. Such a view, however, is not indispensable to sustaining the tax. For it may be considered occupational as to the lessee and another kind of tax to the royalty owner. Unless found as to one or the other to be a tax upon tangible property, it need not be levied ad valorem, and is an excise."

In view of this exposition of the purpose and meaning of the act, we are of opinion that it is not an arbitrary fiat and does not infringe the due process of law clause of the Fourteenth Amendment.

While operations under the lease are carried on by the lessee and not by the lessors, they nevertheless are carried on in virtue of the lease, that is to say, under stipulations made between the lessors and the lessee. The lease shows that the parties to it are, in a very practical sense, committed to and engaged in a common venture for their mutual benefit. The lessors have put into the venture their right to explore for and to extract the oil under their lands, and the lessee has put into it various drilling and pumping appliances and much expense, labor, and time. All that has been put in is devoted to the common purpose of producing oil in which the lessors and the lessee are to have stated interests. It is this production that is taxed against the lessors and the lessee according to their respective interests.

Without question the State has power to lay an excise on the production of oil. Here it is laid, admissibly we think, on those having a direct and beneficial interest in the oil produced and is apportioned between them according to their interests. The apportionment is reasonable, not arbitrary; and is as reasonable to the lessors as to the lessee.

We come next to the contention that the act, in so far as it imposes the tax on the appellants, impairs the obligation of their contract with the lessee whereby he agrees to deliver to their credit, "free of cost," in the pipe line, the equal ⅛ part of the oil produced. The lease contains no mention of taxes or of their payment. It well may be that when rightly construed, the engagement to deliver, free of cost, refers to expenses incurred in producing the oil and conducting it to the pipe line, and is not intended to include governmental exactions, such as a tax. This would appear to be an admissible if not a necessary construction of that engagement. But, be this as it may, the lease was made in subordination to the power of the State to tax the production of oil and to apportion the tax between the lessors and the lessee. The taxing act does not purport to reach or affect any term of the lease. Plainly no stipulation in the lease can be of any avail as against the power of the State to impose the tax, prescribe who shall be under a duty to the State to pay it, and fix the time and mode of payment. And this is true even though it be assumed to be admissible for the lessors and lessee to stipulate as to who, as between themselves, shall ultimately bear the tax. These views are but a reiteration and application of what repeatedly has been held in respect of contracts and their subordination to the taxing power.[7]

It is true that the law in force when the lease was made and for some years thereafter laid a production tax on the lessee alone, and it is equally true that under the act

[7] *Providence Bank* v. *Billings*, 4 Pet. 514, 562; *North Missouri R. Co.* v. *Maguire*, 20 Wall. 46, 61; *Moffitt* v. *Kelly*, 218 U. S. 400, 403; *Henderson Bridge Co.* v. *Henderson City*, 173 U. S. 592, 619–620; *Chanler* v. *Kelsey*, 205 U. S. 466, 478–479; *Kehrer* v. *Stewart*, 197 U. S. 60, 70; *Clement National Bank* v. *Vermont*, 231 U. S. 120, 143; *Lake Superior Consolidated Iron Mines* v. *Lord*, 271 U. S 577, 581.

of 1933 a part of the tax is imposed on the lessors and the part imposed on the lessee is less than what would fall on him under the earlier law. But the State's power in the matter was in no way circumscribed by the earlier law. That law was subject to change at any time through a further exertion of the taxing power; and the lease presented no obstacle to such a change.

It follows that appellants' reliance on the contract clause of the Constitution is ill-grounded.

*Decree affirmed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.