O’NIELL, Chief Justice.
 

 On the 11th day of June, 1927, Nicholas R. Greco bought certain real estate in New Orleans, for $70,000, paying $40,000 in cash and issuing his promissory note for $30,000, secured by a mortgage and vendor’s lien on the property. The mortgage and lien, reserved in the act of sale, were recorded in the mortgage office, as well as in the conveyance office, on that day. The promissory note, secured by the mortgage and vendor’s lien, was- acquired by the Hibernia Mortgage Company, Inc., in due course, soon after the note was issued. Thereafter, on the 27th day of June, 1928, Greco sold the property to the Toga Realty Company, Inc., a Louisiana Corporation domiciled in New Orleans; and, as a part of the price, the corporation assumed the payment of the promissory note for $30,-
 
 *661
 
 000, which Greco had issued, secured by the mortgage and vendor’s lien on the property. In 1932, the Legislature enacted a statute, Act No. 8 of the regular session of that year, levying a franchise tax on every corporation doing business in Louisiana, for the privilege of carrying on or continuing its business, or for the continuance of its charter in this State. The Toga Realty Company, being subject to the franchise tax, failed to pay the tax for the years 1935 and 1936. The State sued the corporation for the franchise taxes for those years, and, on October 15, 1937, obtained a judgment against the corporation for the taxes for 1935 and 1936, amounting to $465.24, and for the penalty of 20 per cent and the attorney’s fee of 10 per cent, as stipulated in the 4th section of Act No, 8 of 1932. The judgment recognized the tax lien in favor of the State, and was recorded in the mortgage office on October 18, 1937. Meanwhile the Hibernia Mortgage Company sued Greco and the Toga Realty Company, via ordinaria, for the balance due on the mortgage note, $26,512.40, plus the interest and attorney’s fee stipulated in the note, and $164 for taxes advanced; and, on the 27th day of October, 1937, the Hibernia Mortgage Company obtained a judgment by default against Greco and the Toga Realty Company, in solido, for the amount sued for, with recognition of the mortgage and vendor’s lien securing the debt, and ordering the property sold to satisfy the judgment. Accordingly, the property was seized by the sheriff to satisfy the judgment in favor of the Hibernia Mortgage Company, and, after being duly advertised for sale, was sold to the Hibernia Mortgage Company on December 23, 1937, for a sum less than the amount of its judgment. The mortgage certificate which was read by the sheriff at the time of his offering the property for sale disclosed the judgment which had been obtained by the State against the Toga Realty Company, for the franchise taxes for 1935 and 1936, amounting to $465.24, plus the penalty and atttorney’s fee, and with recognition of the tax lien in favor of the State. The Hibernia Mortgage Company, therefore, obtained a rule on the State, through its proper officers, and on the recorder of mortgages, to show cause why the mortgage and vendor’s lien, securing the payment of the judgment for $26,512.40, and the interest and attorney’s fee stipulated therein, should not be held and adjudged to be superior in rank to the tax lien in favor of the State, securing the payment of the judgment for $465.24, for the franchise taxes of 1935 and 1936, plus the penalty and attorney’s fee, as stipulated in the 4th section of Act No. 8 of 1932. The Hibernia Mortgage Company pleaded that, inasmuch as its mortgage and vendor’s lien, and the obligation which they secured, constituted a vested right of the Hibernia Mortgage Company, before and at the time when the act of 1932, levying the franchise tax, was enacted, the court could not hold the tax lien superior in rank to the mortgage and vendor’s lien held by the Hibernia Mortgage Company, without impairing the obligation of the contract of Greco and of the Toga Realty Company, or without divesting the Hibernia Mortgage Company of its vested right,—
 
 *663
 
 in violation of Section 10 of Article 1 of the Constitution of the United States, U.S. C.A., and of Section 15 of Article 4 of the Constitution of Louisiana. The judge of the civil district court held that, inasmuch as Act No. 8 of 1932 was an exercise of the taxing power, which is inherent in the State, and inasmuch as the tax affected only incidentally the obligations of contracts theretofore entered into by the corporations that were subjected to the tax, the statute was not violative of the contract clause in Section 10 of Article 1 of the Constitution of the United States, or of the corresponding clause in Section 15 of Article 4 of the Constitution of Louisiana. Hence the judge held that the tax lien in favor of the State was superior in rank to the mortgage and vendor’s lien held by the Hibernia Mortgage Company, and dismissed the company’s rule. The company is appealing from the decision.
 

 According to the 8th section of Act No. 8 of 1932, the lien securing the payment of the franchise tax is a first lien on all of the property of every corporation that is subject to the tax, as soon as a statement 'made by the Secretary of State, under oath, showing the amount of the tax, is recorded in the mortgage office of the parish or parishes where the corporation is doing business. The only question, therefore, is whether it is violative of the contract clause in the Constitution of the United States, and in the Constitution of Louisiana, to adjudge this tax lien superi- or in rank to a mortgage or lien granted by a corporation before the statute was enacted, and granted to secure an obligation resulting from a contract entered into by the corporation before the statute was enacted.
 

 The general rule, that a statute which destroys or impairs the means or remedy for the enforcement of the obligation of a contract impairs the obligation itself, and is therefore violative of the contract clause in the Constitution of the Unit ed States, is not disputed. Any such impairment of the obligation of a contract between individuals, or between private corporations, or between an individual and a private corporation, is within the prohibition of the Constitution, if the statute is not merely a taxitig statute but is one which directly affects the means or remedy for enforcing the obligation. Walker v. Whitehead, 16 Wall. 314, 83 U.S. 314, 21 L.Ed. 357. But a statute which levies a tax, and which affects only incidentally the obligations of private contracts previously entered into between individuals, or between private corporations, or between an individual and a private corporation, does not thereby violate the contract clause in Section 10 of Article 1 of the Constitution of the United States, or the corresponding clause in Section 15 of Article 4 of the Constitution of Louisiana. The reason for that is that contracts made between individuals, or between private corporations, or between an individual and a private corporation, are made with reference to the taxing power inherent in the State, and are made in subordination to that power. Kehrer v. Stewart, 197 U.S. 60, 25 S.Ct. 403, 49 L.Ed. 663; Chanler v. Kelsey, 205 U.S. 466, 27 S.Ct. 550, 51 L.Ed. 882; Lake Superior
 
 *665
 
 Consolidated Iron Mines v. Lord, 271 U.S. 577, 46 S.Ct. 627, 70 L.Ed. 1093; Barwise v. Sheppard, 299 U.S. 33, 57 S.Ct. 70, 81 L.Ed. 23.
 

 The only cases in which it has been held that a statute which merely levies a tax, and which creates a lien to secure the payment of the tax, is violative of the contract clause in the Constitution of the United States, are cases where the State attempted, by means of such a statute, to repudiate or to impair the obligation of a contract entered into by the State herself, or by one of her municipalities of other political corporations or agencies. We have reference to Murray v. Charleston, 96 U. S. 432, 24 L.Ed. 760; and United States ex rel. Rebecca W. Wolff v. Mayor and Administrators of New Orleans, 103 U.S. 358, 26 L.Ed. 395; and Cooley’s Constitutional Limitations, 7th Ed., Ch. XIV, pp. 693 and 694, where the author cites only such cases as Murray v. Charleston, supra, and United States ex rel. Rebecca W. Wolff v. Mayor and Administrators of New Orleans, supra, in support of this pronouncement:
 

 “As the States are forbidden to pass any laws impairing the obligation of contracts, they are of course precluded from levying any taxes which would have that effect. Therefore, as was shown, in a previous chapter [Ch. IX, p. 395], if the State by any valid contract has obligated itself not to tax particular property, or not to tax beyond a certain rate, a tax in disregard of the obligation is void.”
 

 In Murray v. Charleston, supra, and in United States ex rel. Rebecca W. Wolff v. Mayor and Administrators of New Orleans, supra, the court recognized that private contracts made between individuals, or between private corporations, or between an individual and a private corporation, are made with reference to the taxing power which is inherent in the State, and are made in subordination to that power. For example, in Murray v. Charleston, 96 U.S. 432, 24 L.Ed. 760, the plaintiff, Murray, owned certain certificates of indebtedness of the City of Charleston, amounting to $35,262.35. The certificates were promises of the city to pay to the owners of the certificates the sums therein mentioned, with interest at the rate of 6% per annum, payable quarterly. On March 20, 1870, and on March 21, 1871, the city adopted certain ordinances directing the city appraiser to assess a tax of 2 cents on the dollar on all property in the city for the purpose of meeting the expenses of the municipal government. In the third section of the ordinance it was declared that the taxes assessed on the certificates of indebtedness (such as Murray held)- should be retained by the city treasurer out of the interest to be paid on the certificates, when the same should become due and payable. Accordingly, the city treasurer retained, out of four quarterly installments of interest due on the certificates held by Murray, 1/3 of the amount of the interest in satisfaction of the taxes'assessed against the certificates of indebtedness. Murray sued for the amount of interest which the treasurer withheld, and, when the ordinances of March 20, 1870, and March 21, 1871, were set up by the city in defense of Murray’s suit, he pleaded that the ordinances were violative of the contract clause in the Con
 
 *667
 
 stitution of the United States, because his certificates of indebtedness were issued before the ordinances were adopted, and represented obligations which the city owed to him. The Supreme Court of South Carolina held that the ordinances were not violative of the contract clause, but the judgment was reversed by the Supreme Court of the United States. In the opinion rendered in the case the court recognized that private contracts, between individuals or private corporations, or between an individual and a private corporation, were presumed to be made with reference to the taxing power, and to be made in subordination to that power. But the court recognized also that the taxing power of the state, or of a municipality or other agency of the state, did not permit the state or a municipality or other agency of the state to repudiate its obligation, resulting from a contract with an individual or private corporation. In recognizing that distinction, the court said [page 444] :
 

 “It has been strenuously argued on behalf of the defendant that the State of South Carolina and the city council of Charleston possessed the power of taxation when the contracts were made, that by the contracts the city did not surrender this power, that, therefore, the contracts were subject to its possible exercise, and that the city ordinances were only an exertion of it. We are told the power of a State to impose taxes upon subjects within its jurisdiction is unlimited (with some few exceptions), and that it extends to every thing that exists by its authority or is introduced by its permission. Hence it is inferred that the contracts of the City of Charleston were made with reference to this power, and in subordination to it.
 

 “All this may be admitted, but it does not meet the case of the defendant. We do not question the existence of a State power to levy taxes as claimed, nor the subordination of contracts to it, so far as it is unrestrained by constitutional limitation. But the power is not without limits, and one of its limitations is found in the clause of the Federal Constitution, that no State shall pass a law impairing the obligation of contracts.
 

 ******
 

 “What, then, is meant by the doctrine that contracts are made with reference to the taxing power resident in the State, and in subordination to it? Is it meant that when a person lends money to a State, or to a municipal division of the State having the power of taxation, there is in the contract a tacit reservation of a right in the debtor to raise contributions out of the money promised to be paid before payment ? That cannot be, because if it could, the contract (in the language' of Alexander Hamilton) would ‘involve two contradictory things: an obligation to do, and a right not to do; an obligation to pay a certain sum,, and a right to retain it in the shape of a tax. It is against the rules, both of law and of reason, to admit by implication in the construction of a contract a principle which goes in destruction of it.’ The truth is, States and cities, when they borrow money, and contract to repay it with interest, are not acting as sovereignties. They, come down to the level of ordinary individuals. Their con
 
 *669
 
 tracts have the same meanings as that of similar contracts between private persons. Hence, instead of there being in the undertaking of a State or city to pay, a reservation of a -sovereign right to withhold payment, the contract should be regarded as an assurance that such a right will not be exercised. A promise to pay, with a reserved right to deny or change the effect of the promise, is an absurdity.”
 

 In the case of United States ex rel. Rebecca W. Wolff v. Mayor and Administrators of the City of New Orleans, 103 U.S. 358, 26 L.Ed. 395, the relator, Mrs. Wolff, obtained a judgment against the City of New Orleans, in the Circuit Court of the United States for' the District of Louisiana, for the sum of $13,000, represented by bonds which the City had issued to the New Orleans, Jackson and Great Northern Railroad Company, under authority of an act of the Legislature approved March 15, 1854, No. 72. By an Act of March 6, 1876, No. 31,. the power of taxation of the City was reduced so that the City’s means of paying her obligations, and, particularly the bonds in question, were greatly impaired, if not destroyed. This statute was set up by the City in defense of a proceeding by Mrs. Wolff for a mandamus to compel the municipal authorities to pay her judgment out of a certain fund, provided for by Act No. 5 of the Extra Session of 1870, or, if the judgment could not be paid in that way, to levy a special tax for its payment. Mrs. Wolff pleaded that the act of 1876, if applied to her case, would impair the obligation of the City, represented by the railroad bonds, and hence would be violative of the contract clause in the Constitution of the United States. The court sustained Mrs. Wolff’s plea, on the ground that the obligation, represented by the bonds which she held, was an obligation of the City, and that the State also was under the obligation to maintain the authority which the State had conferred upon the City to make the contracts, and to exercise the power of local taxation to the extent necessary to fulfill the obligation of its contracts. In so deciding the court said [page 365]:
 

 “It is true that the power of taxation belongs exclusively to the legislative department, and that the legislature may at any time restrict or revoke at its pleasure any of the powers of a municipal corporation, including, among others, that of taxation, subject, however, to this qualification, which attends all State legislation, that its action in that respect shall not conflict with the prohibitions of the Constitution of the United States, and, among other things, shall not operate directly upon contracts of the corporation, so as to impair their obligation by abrogating or lessening the means of their enforcement.
 

 ******
 

 “It is well settled that a State may disable itself by contract from exercising its taxing power in particular cases. It is equally clear that where a State has authorized a municipal corporation to contract, and to exercise the power of local taxation to the extent necessary to meet its engagements, the power thus given cannot be withdrawn until the contract is satis
 
 *671
 
 •fied. The State, and the corporation, in such cases, are equally bound.”
 

 In the case of Kehrer v. Stewart, 197 U.S. 60, 25 S.Ct. 403; 49 L.Ed. 663, Kehrer complained that an act of the Legislature of Georgia, of December 21, 1900, imposing a license tax of $200 per year upon resident agents of nonresident meat-packing houses, impaired the obligation of his contract of employment with Nelson Morris & Company, which was made before the statute was adopted. The Supreme Court of the United States, rejecting Kehrer’s plea that the statute, if applied to his case, would be violative of the contract clause in the Constitution of the United States, said [page 406]:
 

 “The argument that the tax impairs the obligation of a contract between the petitioner and Nelson .Morris & Company is hardly worthy of serious consideration. The power of taxation overrides any agreement of an employee to serve for a specific sum. His contract remains entirely undisturbed. There was no stipulation for an employment for a definite period; and if there were, it is inconceivable that the state should lose this right of taxation by the fact that the party taxed had entered into an engagement with his employer for a definite period.”
 

 In Chanler v. Kelsey, 205 U.S. 466, 27 S.Ct. 550, 51 L.Ed. 882, it was held that the reduction of the value of an estate by the imposition of a transfer tax (under authority of an amendment of the general transfer-tax law of New York) upon the exercise by will of a power of appointment .conferred by a deed executed before the passage of- the statute imposing the tax, was not violative of Section 10 of Article 1 of the Constitution of the United States, as impairing contract obligations.
 

 In the case of Lake Superior Consolidated Iron Mines v. Lord, 271 U.S. 577, 46 S.Ct. 627, 70 L.Ed. 1093, the plaintiffs, appellants, contended that a statute of Minnesota, being chapter 226 of Laws of Minnesota, approved April 11, 1923, levying a tax of 6 per • cent on all royalty received during each calendar year, for permission to explore, mine, take out and remove ore from any land in the State, was violative of several provisions in the Constitution of the United States, and particularly the contract clause in Section 10 of Article 1, U.S.C.A. — because the plaintiffs were receiving royalties from iron mines, under contracts of lease made before the tax was imposed. The court rejected the contention that the statute levying the tax would violate the contract clause in the Constitution, if the tax should be imposed upon royalties being received under contracts of lease made previous to the passage of the
 
 statute,
 
 — in these few words [page 628] :
 

 “Titles to all the lands and leases were obtained subject to the state’s power to tax. If the statute now in controversy is within that power, it cannot impair the obligation of appellants’ contracts; if beyond, it is, of course, invalid. Accordingly, there is no occasion further to discuss the application of article I, § 10.”
 

 The court found that the statute in controversy in the case of Lake Superior Consolidated Iron Mines, and in the other
 
 *673
 
 cases dealt with in the same decision, was within the taxing power of the state, and that the statute, when applied to royalties being received under contracts of lease made before the statute was adopted, did not violate Section 10 of Article 1 of the Constitution of the United States.
 

 The case of Barwise v. Sheppard, 299 U.S. 33, 57 S.Ct. 70, 81 L.Ed. 23, is very similar in principle to the case of Lake Superior Consolidated Iron Mines v. Lord, supra. The decision in Barwise v. Sheppard, supra, so far as it is pertinent to the present case, is stated completely in the second paragraph of the syllabus,— thus:
 

 “A state statute imposing on the production of oil a tax to be borne ratably by all interested parties, including royalty interests, and charging the active producer or purchaser of oil where sold in the pipe lines with a primary duty to pay the full tax, and authorizing and requiring him to withhold from royalty or purchase money due interested parties, the proportionate tax due from them, does not, in imposing the tax upon a lessor who had executed a lease prior to its enactment, impair the obligation of the lessee thereunder to deliver to the credit of the lessor free of cost in the pipe line an eighth of the oil produced, even though the law in force when the lease was made and for some years thereafter laid a production tax upon the lessee alone, and under the present law a part of the tax is imposed on the lessor, and the part imposed on the lessee is less than what would fall on him under the earlier law.”
 

 In the opinion rendered in Barwise v. Sheppard, supra, the court expressed some doubt as to whether the obligation of the lessee to deliver to the credit of the lessor the one-eighth royalty “free of cost” had reference only to the expense of producing the oil and conducting it to the pipe line, or had reference also to such an expense as a tax on the production of the oil; and the court said:
 

 “But, be this as it may, the lease was made in subordination to the power of the State to tax the production of oil and to apportion the tax between the lessors and the lessee. The taxing act does not purport to reach or affect any term of the lease. Plainly no stipulation in the lease can be of any avail as against the power of the State to impose the tax, prescribe who shall be under a duty to the State to pay it, and fix the time and mode of payment. And this is true even though it be assumed to be admissible for the lessors and lessee to stipulate as to. who, as between themselves, shall ultimately bear the tax. These views are but a reiteration and application of what repeatedly has been held in respect of contracts and their subordination to the taxing power.”
 

 Here the court cited a long list of decisions, including Kehrer v. Stewart, 197 U. S. 60, 25 S.Ct. 403, 49 L.Ed. 663; Chanler v. Kelsey, 205 U.S. 466, 27 S.Ct. 550, 51 L.Ed. 882, and Lake Superior Consolidated Iron Mines v. Lord, 271 U.S. 577, 46 S.Ct. 627, 70 L.Ed. 1093.
 

 There are cases where the Legislature may, by a statute repealing a former statute, put an end to the obligation of a con
 
 *675
 
 tract made by the State or by one of her municipalities, under authority of the former statute. But they are cases where the contract, — the obligation of which is said to be violated, — is not of the nature of a private contract, but is made under authority of a general law, enacted in the exercise of the police power of the State, —as, for example, a contract of employment by the State, or by a municipality, of a person to perform governmental functions. On that subject we are referred to Higginbotham v. City of Baton Rouge, 190 La. 821, 183 So. 168, where the court distinguished the case of Hall v. Wisconsin, 103 U.S. 5, 26 L.Ed. 302, from the case of Newton v. Board of Commissioners of Mahoning County, Ohio, 100 U.S. 548, 25 L.Ed. 710. In Higginbotham’s Case the court said [page 171] :
 

 “The reason why the contract clause in the Constitution is not applicable to contracts of employment of persons to perform governmental functions is that the Legislature is forbidden to make an irrevocable surrender of any of the police power of the State. It is so declared in Section 18 of Article 19 of the Constitution of Louisiana, — thus: ‘The exercise of. the police power of the State shall never be abridged.’ Hence the contract clause in the Constitution does not interfere with the authority of the Legislature to repeal at any time any law under which an individual has been employed to perform governmental functions, and, by such repeal, to put an end to the contract of employment.”
 

 Our attention is called to the fact that it is provided also in the Constitution, in Section 1 of Article 10, that “The power of taxation * * * shall never be surrendered, suspended or contracted away.” But the doctrine of Higginbotham’s Case has really no application to the present case, because, in this case, the contract obligation is not an obligation of the State or of one of her municipalities, but is a contract obligation of an individual and of a private corporation.
 

 The judgment appealed from is affirmed.
 

 LAND, J., absent.