26 So.2d 726

## OIL WELL SUPPLY CO. v. RED IRON DRILLING CO. et al.

### No. 37646.

May 27, 1946.

· John B. Smullin, of Baton Rouge, and Irion & Switzer and Mabry & Carstarphen, all of Shreveport, for the State, appellant.

Tucker, Bronson & Martin, of Shreveport, for plaintiff, appellee.

ROGERS, Justice.

The Oil Well Supply Company, a New Jersey corporation authorized to do business in Louisiana, obtained judgment

against the Red Iron Drilling Company, a Texas corporation, also authorized to do business in Louisiana, for a sum in excess of $100,000, with recognition of its mortgages and privileges on certain oil properties situated in the Parish of Caddo. The properties described in the judgment were seized and sold by the sheriff of the Parish of Caddo under a writ of fieri facias. The sheriff, however, refused to deliver the proceeds of the sale to the plaintiff, Oil Well Supply Company, because the mortgage certificate obtained from the Clerk of Court showed that certain liens and judgments in favor of the State of Louisiana were inscribed against the Red Iron Drilling Company.

The Oil Well Supply Company instituted a proceeding by rule against the sheriff and the State of Louisiana, through its proper representatives, to show cause why plaintiff in rule should not be paid the proceeds of the sale by preference and priority to the claims of the State.

The Department of Revenue, through the acting Collector of Revenue, and the State of Louisiana, through the Attorney General, answered the rule alleging that the liens and judgments in favor of the State were superior to plaintiff's liens and mortgages and praying that they be recognized as such and that the sheriff be ordered to discharge the liens and judgments of the State from the proceeds of the sale in his possession. The sheriff joined in the answer of the State and adopted it as his own. The liens and judgments claimed by the State resulted from the failure of the Red Iron Drilling Company to pay certain severance taxes, power taxes and corporation franchise taxes.

After hearing the parties, the trial judge rendered a judgment making the rule absolute, decreeing plaintiff's mortgages and liens to be superior· in rank to the claims of the State and directing the sheriff to pay the proceeds of the sale to plaintiff. The State of Louisiana has appealed from the judgment.

Only questions of law are involved. The facts are not disputed. The claim of the Oil Well Supply Company against the proceeds of the sale of the properties of the Red Iron Drilling Company is based on two mortgages covering the property and recorded on January 10, 1940, and May 9, 1941. The claim asserted by the State in opposition to the claim of the Oil Well Supply Company comprises six separate and distinct items. One of the items is a tax lien in favor of the State for severance taxes due for the period from August to December, 1939, which was not recognized by a judgment. The remaining five items represent judgments obtained by the State against the Red Iron Drilling Company; three for power taxes, one for severance taxes, and one for corporation franchise taxes. These judgments were rendered and recorded subsequent to the execution and recordation of the mortgages held by the Oil Well Supply Company.

With the exception of the judgment for the corporation franchise tax, the judgments obtained by the State against the Red Iron Drilling Company do not show that they were for taxes and none of the judgments, including the one for the corporation franchise tax, recognizes a lien or privilege in favor of the State.

In its rule to show cause, the Oil Well Supply Company embodied a plea of three years prescription based on Article 19, Section 19 of the Constitution of 1921, as amended by Act 35 of 1938, against the claim of the State for all taxes, liens and privileges. The Oil Well Supply Company also filed a separate plea of three years prescription against any ad valorem tax and all other taxes, liens and privileges securing same due to the State and Parish by the Red Iron Drilling Company prior to the year 1940.

By consent of the parties, the ad valorem taxes were paid out of the funds in possession of the sheriff and to that extent the rule against him was discharged.

In rendering his decision the trial judge assigned written reasons. He held that the lien for severance taxes due in 1939, and recorded in 1940, had prescribed under the provisions of Article 19, Section 19 of the Constitution of 1921, since no suit was filed within three years from December 31, 1939. The correctness of this holding is conceded by counsel representing the State.

The judge further held that as to the judgments in favor of the State, with the exception of the judgment covering the power taxes, since in the proceedings which resulted in their rendition no lien or privilege was asserted or merged in the judgments and more than three years had elapsed since December 31st of the year in which the taxes were levied, the lien and privilege securing them had prescribed under Article 19, Section 19 of the Constitution of 1921. With reference to the judgment for the power taxes, he held that it was controlled by the provisions of Act 157 of 1942, providing that State taxes are a lien and privilege but shall affect third persons only from the date of recordation and take their respective ranks by virtue of the recordation. The judge further held in passing that even if the judgments might be considered as embracing the lien and privilege granted the State by law, that inasmuch as the dates of their recordation were subsequent to the dates of the recordation of the mortgages held by the Oil Well Supply Company, they were inferior in rank to the mortgages.

It is the contention of the State that the trial judge erred in his judgment for the reason that the State obtained its judgments against the Red Iron Drilling Company prior to the expiration of three years from the thirty-first day of December in the year in which the various taxes were levied and reduced to judgments under the then existing tax laws and that the judgments were not prescribed and outranked the claims of the Oil Well Supply Com-

pany; that the trial judge also erred in holding that the judgments in favor of the State were by virtue of the provisions of Act 157 of 1942, subordinate in rank to the claims of the Oil Well Supply Company because its mortgages had been recorded and the tax liens and privileges of the State had not been recorded.

Prior to the adoption of Act 157 of 1942, severance taxes, corporation franchise taxes and taxes assessed for generating electricity for power were not secured by a lien or privilege unless the appropriate sworn statement was recorded in the mortgage records as required by the statutes levying the respective taxes. Section 11, Act 24 of 1935, 2d E.S., Dart's Stat. Sec. 8532; Section 8, Act 10 of 1935, 1st E.S., Dart's Stat. Sec. 8729; Section 6, Act 25 of 1935, 2d E.S., Dart's Stat. Sec. 8793.

A reading of the provisions of the foregoing statutes clearly shows that the mere levying of the tax does not of itself give rise to a lien. It is only when the appropriate statement sworn to by the proper officer is recorded in the mortgage records that any lien arises or attaches. The wording of the three acts is identical—"which statement when filed for record, shall operate as a first lien, privilege and mortgage * * *." This was the ruling of the Court in the case of Hibernia Mortgage Co. v. Greco, 191 La. 658, 186 So. 60. In discussing the lien for franchise taxes, as provided for by Act 8 of 1932, which was superseded by Act 10 of the First Extra Session of 1935, this Court said, 191 La. at page 663, 186 So. at page 62: "According to the 8th section of Act No. 8 of 1932, the lien securing the payment of the franchise tax is a first lien on all of the property of every corporation that is subject to the tax, as soon as a statement made by the Secretary of State, under oath, showing the amount of the tax, is recorded in the mortgage office of the parish or parishes where the corporation is doing business."

As a result of the failure to record the sworn statements required by law, the State has no lien securing the payment of the taxes which it claims in this proceeding, unless it has such a lien by virtue of the judgment obtained against the Red Iron Drilling Company or unless it is entitled to the preference granted by Act 157 of 1942, under which the lien is inferior to the mortgages held by the Oil Well Supply Company.

Article 19, Section 19 of the Constitution of 1921, as amended by Act 35 of 1938, declares that privileges for taxes, state, parish and municipal, need not be recorded to affect third persons: "provided such tax liens * * * shall lapse in three years from the 31st day of December in the year in which the taxes are levied, and whether now or hereafter recorded." As pointed out in Thibodaux v. People's Sugar Co., 173 La. 1002, 139 So. 325, 327: "Manifestly, the tax liens referred to in this article are not those merged into a judgment, but

are such as exist, unaffected by judicial proceedings." And in the same case it was held: "It has been the accepted practice in this state to convert privileges and liens into judgments, and then to treat the judgments as valid and enforceable for ten years after rendition, notwithstanding the actual lapse of time sufficient to prescribe against the original lien or privilege, if it had not been reduced to judgment."

Although, under the constitutional provision, tax liens, mortgages and privileges are prescribed in three years, the right to recover the taxes themselves by ordinary suit and judgment against the tax debtor remains unimpaired. Apparently that is the procedure that was followed in this case. There is no reference at all to the tax liens and privileges in the proceedings in which the judgments were obtained nor were the tax liens and privileges converted into the judgments. As a matter of fact, because of the failure in each instance to record the proper statement in the mortgage records as required by the respective statutes which levied the taxes, created the lien and granted the preference, there was no basis on which the lien and privilege could be asserted in the proceedings which gave rise to the judgments. The judgments themselves are simply personal judgments against the tax debtor in the various amounts due the State for the taxes claimed herein. As a result of their recordation in the mortgage records, they operate as judicial mortgages against all the property of the judgment debtor.

Since the tax liens and privileges were not asserted in the suits to recover the amount due for taxes and were not merged in the judgments rendered against the tax debtor they remain subject to the constitutional prescription of three years and are not subject to the statutory prescription of ten years as the State contends.

Answering the contention of the Oil Well Supply Company, that the State had no valid judgment recognizing its lien and privilege so far as the franchise tax was concerned because the Secretary of State had failed to record a sworn statement in the mortgage records showing the amount of taxes due as required by paragraph 1 of section 8 of Act 10 of the First Extra Session of 1935, the State contends that it was not necessary to give the notice required by the statute. The case of State v. Stewart Bros. Cotton Co., 193 La. 16, 190 So. 317, is cited in support of the State's contention. But the Stewart case is not authority on any issue involved in this case. The notice referred to in the Stewart case is the five days notice provided for in Section 9 of Act 10 of the First Extra Session of 1935. The contention there was that the action of the State was premature because the notice was not given to defendant by the Secretary of State. But the Court held that the State was proceeding under the authority of Act 14 of the Second Extra Session of 1935, and that under that statute authorizing a summary proceeding for the collection of taxes, no notice in advance of the institution of the

proceeding was necessary. The statute is only procedural in character and nowhere purports to create a lien or privilege.

The State refers to the cases of Hibernia Mortgage Co. v. Greco, 191 La. 658, 186 So. 60, and State v. J. Bodenger Realty Co., 195 La. 1014, 197 So. 741, in which it was held that a franchise tax is superior to a mortgage and vendor's lien. It is stated in the brief filed on behalf of the State that: "In these cases no statements or liens were recorded. The court took the position that even though no statement had been previously filed, a judgment established a lien." This statement is not wholly correct. The decision in the Bodenger case was predicated on the decision in the Hibernia case, and the statement of facts in the opinion does not disclose whether a statement was recorded or not, and apparently the point was not raised, discussed or decided by the Court. In the Hibernia case, while the opinion does not affirmatively show whether or not a statement was filed it does indicate that such was the fact. The opinion does show, however, that the judgment specifically recognized the tax lien in favor of the State and that it was recorded in the mortgage records. In neither case does it appear that the court took the position that even though no statement had been previously filed a judgment established the lien.

The Hibernia case was finally disposed of in January, 1939, and the Bodenger case was finally disposed of in July, 1940. At the regular session of the Legislature held in 1940, Act 265 was adopted. This act purported to make the law uniform with reference to all taxes, including franchise taxes, and it further attempted to nullify the effect of the decision in the Hibernia case by providing in Section 3 that the taxes, "whether sued upon or not, shall be a lien on all the property of the debtor except as against an innocent purchaser for value without notice in the usual course of business, * * *:" In 1942, the Legislature passed Act 157 reenacting and amending Act 265 of 1940, so as to eliminate its unconstitutional features and by virtue of this act the effect of the decisions in the Hibernia case and the Bodenger case have become valueless as authority on the question involved in this case.

Act 157 of 1942, was adopted in order to provide a uniform remedy and procedure for the administration of State taxes as defined in the act, uniform remedies and procedures for their collection, and uniform penalties and provisions for appeal by taxpayers. Under Section 3 of the act, it is provided that the liability arising under any State tax law except as is specifically provided by Act 140 of 1932 (the Building and Loan Code), shall operate as a lien, privilege and mortgage on all of the property of the tax debtor, and shall be enforceable in any court of competent jurisdiction or may be enforced as otherwise provided in the act, provided that the lien and privilege created by the section "shall affect third.

parties only from date of recordation, and provided further that the said lien, privilege and mortgage shall take their respective ranks by virtue of recordation."

Article 8 of the Civil Code declares that laws are presumed to operate prospectively and not retrospectively, but statutes which are purely remedial in their nature are not subject to the rule of interpretation announced in the code article unless their language plainly shows a contrary intention. Paulsen v. Reinecke, 181 La. 917, 160 So. 629, 97 A.L.R. 1184.

Liens and privileges securing taxes due the State are merely one of the remedies provided by law for enforcing their collection. There are other remedies, such as penalties, interest, attorney's fees, costs, etc. The authority to provide these remedies flows from the power of taxation vested in the Legislature and the remedies from time to time may be varied by the Legislature in order to enforce collection of taxes, and it is the remedy in force at the time the collection of the taxes is sought that governs. These legal principles are illustrated in the case of Henry v. McKay, 164 Wash. 526, 3 P.2d 145, 77 A.L.R. 1025.

Since it appears that the legislative policy, as expressed in Act 157 of 1942, is to make the lien and privilege for severance taxes, franchise taxes and power taxes subordinate to duly recorded mortgages held by third persons and to take their rank in order of recordation, even if the State has any lien and privilege resulting from the judgments in its favor, nevertheless, the lien and the rank thereof are mere remedies for the enforcement of the collection of taxes and are governed by the law in force at the time the collection is sought. The rank of the mortgages or privileges held by the State is controlled by the provisions of Act 157 of 1942, which act being remedial in its nature, must be given retroactive effect in the absence of language showing a contrary intention. Accordingly, any lien or privilege in favor of the State, as a result of its judgments or otherwise, is inferior to the prior recorded mortgages held by the Oil Well Supply Company and the trial judge was correct in so holding.

The case of Price v. Ducros, 25 So.2d 450, 452, by the Court of Appeal of the Parish of Orleans, is cited and the opinion in the case is reproduced in the brief of counsel representing the State. That case involved unemployment compensation contributions by an employer and not tax liens and privileges as are involved in this case. Prior to the amendment by Act 11 of 1940, the remedy afforded under Act 97 of 1936 was a mere civil action and an ordinary judgment with a limited preference for the contributions. Sec. 13, paragraphs (b) and (c). Act 11 of 1940, § 9, par. (b) and subpar. (3), amended Section 13 of Act 97 of 1936, so as to provide for the recordation of a sworn affidavit making it similar in most respects to the taxing acts. If, in the Price case, a sworn statement was recorded and the lien was recognized in the judgment, then the court came to the correct conclusion

that the lien had not become prescribed under Article 19, Section 19 of the Constitution of 1921. However, the court's decision with reference to the effect of Act 133 of 1942, ranking the lien is not wholly correct. After citing and discussing the cases of Hibernia Mortgage Co. v. Greco and State v. Bodenger Realty Co., the organ of the court remarked: "The cases referred to as inspiring the legislation may have had some influence but it will be observed that * * * no charge has been made in the law with respect to franchise taxes as was done with unemployment taxes." It should be noted, however, that the rehearing in the Hibernia case was refused on January 10, 1939, and at the next regular session of the Legislature in 1940, Act 265 was passed. This act purported to make the law uniform with reference to all taxes, including franchise taxes, and it further attempted to nullify the decision in the Hibernia case. Then in 1942, the Legislature passed Act 157 reenacting and amending Act 265 of 1940, by which the effect of the decision in the Hibernia case was again counteracted. It should be further noted that the Legislature has placed the unemployment compensation contribution upon a different footing from other taxes, for at the same sessions it enacted Act 265 of 1940 and Act 157 of 1942, making uniform the law with reference to taxes generally, and under the administration of one department, it also enacted Act 11 of 1940, and Act 133 of 1942, continuing the administration of the unemployment compensation contributions under a differ-

ent department. However, Act 133 of 1942, is in keeping with the legislative policy to lend certainty to titles where taxes are involved and to rank mortgages, liens and privileges according to the time of recordation. In these circumstances, we are unable to consider the decision in the Price case as authority for the issue involved in this case.

For the reasons assigned, the judgment appealed from is affirmed.

FOURNET and HAWTHORNE, JJ., take no part.