SINGER SEWING MACHINE COMPANY, PROSECUTOR, v. NEW JERSEY UNEMPLOYMENT COMPENSATION COMMISSION, THE BOARD OF REVIEW OF THE NEW JERSEY UNEMPLOYMENT COMPENSATION COMMISSION, ET AL., ANTHONY A. GALDE AND PETE DI PERNA, DEFENDANTS.

Submitted January 20, 1942—Decided August 20, 1942.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and HEHER.

For the prosecutor, *Hood, Lafferty & Emerson* (*Sigurd A. Emerson,* of counsel).

For the defendant Board of Review of the New Jersey Unemployment Compensation Commission, *Clarence F. McGovern.*

The opinion of the court was delivered by

HEHER, J.   The defendant Galde was employed as a canvasser and salesman by the defendant DiPerna, a "distributor" of prosecutor's manufactures, new and second-hand; and the point of controversy is whether Galde is eligible for unemployment compensation benefits under *R. S.* 1937, 43:21-1, *el seq.*

Concededly DiPerna was not an "employer" within the definition incorporated in *section* 43:21-19 (*h*).   The Board

of Review ruled that he was "a contractor for or agent of" prosecutor, an "employing unit" subject to the act, and therefore prosecutor is to be deemed the employer of Galdo for the purposes of the act; and that, moreover, DiPerna was also an "agent" and "employee" of prosecutor within the purview of *section* 43:21-19 (*g*). It was found that prosecutor had "actual or constructive knowledge of the work," the statutory *sine qua non* as respects these latter classifications.

Under the distributor's contract with prosecutor, the goods were shipped to him on consignment for "sale and lease" at prices and on terms fixed by prosecutor, in territory assigned to him. He was at liberty to return unsold merchandise. He dealt only in prosecutor's products. For his services, he was paid a specified "selling commission" and a "collecting commission" on accounts entrusted to him for collection. There were provisions for the taking of second-hand machines and equipment "in trade." Prosecutor fixed the maximum allowance for such; and the contract contained an adjustment formula for use where the allowance in a given case was greater or less. Unlike the merchandise consigned to the distributor for sale, machines taken in trade were the latter's property. The installment contracts were made directly between the prosecutor and the vendee. The distributor's place of business was established in the contract; and he undertook to pay "from his own funds all of the expenses incurred by him incidental to the carrying on of business;" under the contract, "and the compensation of any agent or employee of his, and not to incur any such expenses or obligations therefor in the name of or on behalf of the Company in any respect or to pledge the credit or use the funds of the Company for any such purpose;" to "exercise all due and reasonable care for the protection and preservation" of the property so consigned to him; to "repossess and recover for and deliver to the Company any such property sold or leased when repossession is authorized and desired by the Company;" and to "ascertain for the Company and to inform the Company" of the location of goods "on which full payment on the sale or lease" thereof had not been made. Thus, the distributor hired, compensated, supervised and controlled all

the employees of his business, and defrayed the cost of maintaining the premises needed for that purpose and of carrying liability and workmen's compensation insurance. The contract was terminable at the pleasure of either party. The distributor had borne this relationship to prosecutor for many years, and had been engaged in business at the place fixed in the contract for a period of nine years. About 65% of his income was derived from the sale of new machines on prosecutor's account, and 35% from the sale of rebuilt second-hand machines and parts and repair charges.

*First:* It is affirmed that the claimant cannot be deemed an "employee" of prosecutor within the intendment of *subsection* 19 (*g*), *supra,* since the distributor's contract is not one "for any employment," and therefore the relation is not of the type contemplated by that provision.

More specifically, it is said that, to fall within the statutory class, the contract "must contemplate the creation of or require the employment of assistants by the contractor (distributor) in the business of the principal (prosecutor);" that the legislative design "was to prevent subject employers from relieving themselves of responsibility by accomplishing through a contractual relationship what they would do otherwise through direct employment;" and that, so considered, "a sound construction of the term 'contracts * * * for any employment' would necessitate a finding that the overhead employer contracted with an individual for the accomplishment of a definite result in the business of the overhead employer and that the individual so contracting, in order to accomplish that result, was under an obligation or requirement to employ others—who, as easily, could have been employed, in the first instance, by the overhead employer." In contradistinction, the particular contractual relation is classified as one "where the contractor hires individuals on his own accord and volition to assist him in his work, free from any express or implied obligation, and where the contractor functions in a sphere of activity unlimited by the overhead employer and free from any definite commitment imposed upon him." By way of illustration, it is suggested that "if the contract between the prosecutor and the distribu-

tor required the distributor to consummate a stated number of sales monthly, and, in order to live up to the terms of the agreement and fulfill his commitment, the distributor was required to employ the aid of assistants, those assistants justifiably could be deemed the employees of the prosecutor;" and it is maintained that the distributor would not have breached his contract "if he had not employed any assistant such as the claimant," and that the phrase "for any employment" connotes "a relationship under which the contractor in order to accomplish the undertaking of the contract necessarily is compelled to solicit and employ the service of others."

We cannot subscribe to this interpretation. By the terms of *subsection* 19 (*g*), *supra*, where the "employing unit contracts with or has under it any contractor or subcontractor for any employment which is part of its usual trade, occupation, profession, or business, unless the employing unit as well as each such contractor or subcontractor is an employer" in virtue of *section* 43:21-8 (*c*) or *section* 43:21-19 (*h*), the employing unit shall be "deemed to employ each individual in the employ of each such contractor or subcontractor for each day during which such individual is engaged in performing such employment * * *." The employment here contracted for was indubitably a part of prosecutor's usual trade or business in the legislative sense. It was primarily a contract for a selling service—such as patently takes the classification of an employment identified with prosecutor's business. The Company manufactured sewing machines, vacuum cleaners, motors and tables, and the individual parts thereof; and it was essential that there be a consumer outlet. Thus the distributor's function was an integral part of the business. And it is plainly not requisite that the contractor be under an absolute duty to employ the assistance of others for the fulfillment of the service so assumed. The contract contemplates the contractor's employment of such servants as he may deem advisable for the performance of his undertaking. Indeed, there is provision for reimbursement by the contractor or subcontractor not classed as an "employer" by the statute for contributions paid by the employing unit with respect to the

former's employees. *Section* 43:21-19 (*g*), *supra*. In the circumstances, the employing unit is regarded as the employer of persons in the service of the contractor, unless both the employing unit and the contractor are treated as "employers" under *subsections* 8 (*c*) or 19 (*h*), *supra*. Not every contractual relation is comprehended in the statutory class. "Employment" means "service" in a fairly well-defined field—such as is "performed for remuneration or under any contract of hire." *Section* 43:21-19 (*i*). And the terms "part of" and "usual trade, occupation, profession, or business" qualify the precedent phrase "for any employment," and together they express the quality of the relationship. A "contractor" and a "subcontractor" differ from a mere "agent" and "employee," whose employees are to be considered servants of the employing unit only in case the latter had "actual or constructive knowledge of the work." *Section* 43:21-19 (*g*), *supra*.

The particular clause is to be viewed in the light of the declared public policy to alleviate the evils of involuntary unemployment, and thereby to achieve a degree of social security essential to the health, morals, and general welfare of the people of the state. *Section* 43:21-2 enjoins the consideration of this policy in the interpretation and application of the statute. The manifest purpose of the provision is the advancement of the central statutory scheme through the inclusion in the category of employees entitled to benefits of those serving the contractor or subcontractor of·an employing unit in an employment constituting a component part of the usual trade, occupation, profession, or business of such employing unit.

The wording of the jurisdictional provisions is to be given its fair significance. *Alexander Hamilton Hotel Corp.* v. *Board of Review,* 127 *N. J. L.* 184. The intent of the lawmaking body is to be found in its language; and, while the letter of the enactment is not always controlling, the meaning thus expressed is not to be enlarged or modified unless the context reveals strong justification therefor. Where the legislative design is stated in clear, certain and unambiguous language, there is no room for construction. A judicial

modification of the purpose thus signified would constitute the exercise of the legislative function. Departure from the literal import of the terms employed to declare the legislative object is warranted only to effectuate the intention evident from a view of the whole law and other laws *in pari materia*.

In this view, there is no occasion to consider the question of whether the distributor here is also fairly classable as both an "agent" and "employee" of prosecutor within the concept of *subsection* 19 (*g*). Compare *Schomp* v. *Fuller Brush Co.*, 124 *N. J. L.* 487; *affirmed*, 126 *Id.* 368; *Federal Trade Commission* v. *Curtis Publishing Co.*, 260 *U. S.* 568; 43 *S. Ct.* 210; 67 *L. Ed.* 408; *Singer Sewing Machine Co.* v. *State Unemployment Compensation Commission*, 167 *Ore.* 142; 103 *Pac. Rep.* (2*d*) 708; affirmed on rehearing, 116 *Id.* 744.

*Second:* But it is insisted that, so read, this statutory provision is violative of the contract clauses of the Federal and State Constitutions and of the due process and equal protection clauses of the Fourteenth Amendment of the Federal Constitution, and also of *article IV, section 7, paragraph* 4, of the State Constitution, directing that every law shall embrace but one object.

In brief, the argument is that so to construe the statute "is to go beyond the public purpose and to tax something other than the exercise of a privilege;" that the "tax * * * is sought to be imposed not upon the exercise of 'the right to employ,' for the prosecutor never possessed that right, nor 'upon the relation of employment,' for no employment relationship is present, but solely upon the exercise of the right of the prosecutor to contract with the distributor;" that the basic design of the statute is to "stabilize employment and relieve unemployment," and prosecutor was not "in a position to stabilize the employment of those hired by the distributor," and "no public purpose therefore is served by taxing the prosecutor for the employees of another;" that "the employees of an independent contractor" may not "by legislative fiat be made the employees of someone else who does not pay their wages or control their activities;" that "the mere act of contracting did not endow the prosecutor with the

qualities or attributes of an employer, when in actual fact it possessed none of those qualities or attributes;" that the classification of "prosecutor as an employer of the claimant" is therefore arbitrary and unjust; that "to create an employment relationship out of an existing independent relationship is to impair the obligation of the contract between the prosecutor and the distributor as it existed prior to the enactment of the law in question;" and that the construction thus adopted constitutes the imposition of a tax "not upon an employment relationship but upon the naked right to contract," and thus "causes the act to embrace more than one object."

We find these contentions to be without substance. As stated, the avowed legislative purpose is the attainment of economic and social security and betterment in the exercise of the police power; and the means employed are in no sense arbitrary or capricious. They bear a reasonable relation to the object in view. Where the purpose is a legitimate function of government, and the measures invoked are wholly reasonable and appropriate to that end, there is no invasion of the cited constitutional guarantees. The Fourteenth Amendment safeguards the fundamental rights of person and of property against arbitrary and oppressive state action. Relief of unemployment is of pre-eminent public concern; and if, in the exertion of the taxing power for the fulfillment of that object, classifications are made and exemptions granted which are grounded in considerations of policy and practical convenience, they are not to be condemned as arbitrary and illusory. *Steward Machine Co.* v. *Davis*, 301 *U. S.* 548; 57 *S. Ct.* 883, 886; 81 *L. Ed.* 1279; *Carmichael* v. *Southern Coal and Coke Co.*, 301 *U. S.* 495; 57 *S. Ct.* 868; 81 *L. Ed.* 1245. If the classifications bear a reasonable relation to the subject of the enactment, the test of constitutional sufficiency is met.

Assayed in the light of the primary legislative design, the classification of the contractor's employees as servants of the employing unit has a rational basis, wholly free of the element of arbitrariness. There is no undue discrimination. As said, it is made a condition that the contract cover employment

which is part of the employing unit's usual trade, profession, or business, and that either one or the other of the employing units lacks the status of an "employer" as defined in the act. In these circumstances, the relationship between the employing unit and the contractor's employees is sufficiently close and direct to be regarded in the effectuation of the basic legislative policy of classifying an "employer" as an employing unit having eight or more individuals in employment for the specified period. The primary purpose no doubt was to secure parity between the employing unit doing business through its own employees and those who accomplish the same result through the medium of a contractor. The employing unit and the contractor are for this purpose considered as one. And, as noted, there is provision for the recovery by the former from the latter of the contributions made.

The statute levies a tax upon the relation of employment and those of kin to it. As respects the nature of the service falling into the employment category, the lawmaking body is not restrained by the limited common-law concept of the master and servant relationship. In the exercise of the sovereign power to tax, a state is free to select the subjects of taxation. *Carmichael* v. *Southern Coal and Coke Co., supra.* It may for a public purpose lay an excise upon the right to employ and to do business. *Barwise* v. *Sheppard,* 299 *U. S.* 33; 57 *S. Ct.* 70; 81 *L. Ed.* 23. "Natural" rights are subject to taxation. "An excise is not limited to vocations or activities that may be prohibited altogether. It is not limited to those that are the outcome of a franchise. It extends to vocations or activities pursued as of common right. What the individual does in the operation of a business is amenable to taxation just as much as what he owns, at all events if the classification is not tyrannical or arbitrary." *Steward Machine Co.* v. *Davis, supra.* Within its constitutional province, the legislature is the arbiter of the public policy of the state. In the exercise of the police power, it may place the cost of the mitigation of a public evil on those from whose business the evil emanates. *Howes Brothers Co.* v. *Massachusetts U. C. Comm.,* 296 *Mass.* 275;

*5 N. E. Rep.* (*2d*) 720. This reserve element of sovereignty has been invoked to sustain workmen's compensation acts as measures placing upon the employer the burden of the loss of earning power suffered in the common enterprise. *New York Central Railroad Co.* v. *White,* 243 *U. S.* 188; 37 *S. Ct.* 247; 61 *L. Ed.* 667; *Mountain Timber Co.* v. *Washington,* 243 *U. S.* 219; 37 *S. Ct.* 260; 61 *L. Ed.* 685; *Arizona Employers' Liability Cases,* 250 *U. S.* 400; 39 *S. Ct.* 553; 63 *L. Ed.* 1058.

Liberty of contract is not absolute. The right to make contracts is subject "to the essential authority of government to maintain peace and security, and to enact laws for the promotion of the health, safety, morals, and welfare of those subject to its jurisdiction." *Chicago, B. and Q. Railroad Co.* v. *McGuire,* 219 *U. S.* 549; 31 *S. Ct.* 259; 55 *L. Ed.* 328; *New York Central Railroad Co.* v. *White, supra.* Legislative action in this field is limited only by the principle that it must bear a reasonable relation to an object within sovereign authority.

And this statutory regulation does not impair the obligation of the contract. The contract was made in subordination to the state's sovereign power to levy this tax for a public purpose. *Barwise* v. *Sheppard, supra.* That is a continuing authority to which all contracts are subject. Moreover, in the exercise of the police power for a public end, there is a reasonable margin of action to preclude evasion of the essential legislative object.

It necessarily follows from the foregoing considerations that the object of the statute is single and not double within the purview of the cited provision of the State Constitution.

Judgment affirmed, with costs.