The appeal is by Charles Kansel, trading as Uptown Printing Company, from a judgment entered against him in the Supreme Court affirming a determination of the Unemployment Compensation Commission and dismissing a writ of certiorari issued to Kansel to review the same.
Contributions were assessed upon the theory that certain shops outside of appellant's direct business came within the application of the following provision in R.S. 43:21-19(g):
"Whenever any employing unit contracts with or has under it any contractor or subcontractor for any employment which is part of its usual trade, occupation, profession, or business, unless the employing unit as well as each such contractor or subcontractor is an employer * * *, the employing unit shall for all the purposes of this chapter be deemed to employ each individual in the employ of each such contractor or subcontractor for each day during which such individual is engaged in performing such employment; * * *."
The appellant (prosecutor below) was an employing unit. He employed eight men or more, therefore was an employer in the statutory sense and paid the tax accordingly. The *Page 616 
question is whether the work which he had caused to be done outside of his shop comes within the application of the foregoing statutory provision inasmuch as the concerns which did that outside work did not severally employ eight men and so were not "employers" within the statutory definition. Of help in construing subsection (g) supra is subdivision (i) (6) of the same section, which provides that:
"(6) Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the commission that
(A) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and
(B) such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
(C) such individual is customarily engaged in an independently established trade, occupation, profession or business."
The Supreme Court found, inter alia, that "in this case the employment and work contracted for was all a part of the usual business of the prosecutor." If that were a finding of fact and had support in the proofs, it would be binding upon us. FordMotor Co. v. Fernandez, 114 N.J.L. 202. We understand it to be a mixed finding of fact and law; to the extent that it is a finding of fact it is without support in its full scope.
Appellant conducted, in the City of Newark, the business of a job printer, defined in Webster's New International Dictionary, Second Edition, as "one who does miscellaneous printing, esp. circulars, cards, billheads, etc." Prosecutor testified that his business was "jobs, letterheads, cards, billheads, and so on." He also testified that the shops herein referred to and which he utilized were "not connected with the printing trade at all;" and by "printing trade" we understand "job printing trade." The payments to outside concerns forming the basis of the assessments made against the prosecutor *Page 617 
were made to firms specializing in one or another of these crafts: paper ruling, engraving, steel plate engraving, plateless engraving, linotype machine work, photoengraving, electrotype and off-set printing. No question is raised regarding the good faith of the appellant. There is no intimation that he engaged outside concerns employing less than eight men to do a part of his job so that he might escape the tax. All of the employments outside the plant were bona fide and were for the doing of work, necessary to the completion of the job, which appellant's plant was not equipped to handle. It is not essential, for our purpose, to go into the affairs of all of the eight firms which did work for appellant and with respect to whose labor the disputed assessment was made. A few will suffice to point our view.
The Empire Wax Engraving Company was one of the business firms which served prosecutor and his predecessor — treated as one with him — the Uptown Printing Co., Inc. The total amount paid by Uptown Printing Co., Inc., to that concern for all work done by it for the last two quarters of 1938, the four quarters of 1939, the four quarters of 1940 and the four quarters of 1941 was $298.69, and the assessment laid against appellant as to it for the period was $14.50, of which amount $3.43 was for accrued interest. The total amount paid to the same firm by appellant individually for the first three quarters of 1942 — which completed the period in controversy — was $60.08, and the total assessment laid thereon was $1.84, of which amount 16c was interest. It is apparent that such small figures extending over so long a time — more than four years — and covering a multitude of unrelated jobs involve a large amount of intricate bookkeeping, particularly when involved with like accounts with other concerns. But the important feature is that according to the uncontradicted testimony the work done by the Empire Wax Engraving concern was not a part of the busines of a job printer. We have already referred to the appellant's testimony in that respect. Joseph Villanella, one of the two partners constituting the Empire Wax Engraving Company, having described the nature of the work, testified that the business was entirely different from that of a job printer and that the charges billed *Page 618 
to its customers were on the basis of the square inches or words in the product and did not have a labor item as a component part.
Likewise as to the Graphic Art Engraving Company. The total payments made to that company from July 1st, 1938, to July 1st, 1942, came to $313.81, and the total assessment laid for that period was $14.52, of which $3.32 was for accrued interest. The evidence, so far as we have discovered, is undisputed to the effect that the work done by that firm constitutes a different trade from job printing and that the 150 job printers of the City of Newark rely upon two such specialty houses for work of that character.
With respect to bookbinding, it is doubtless true that large printing houses frequently do undertake to perform binding of a sort; but we find nothing in the proofs to sustain a finding that bookbinding is a part of the usual business of a job printer as conducted in the City of Newark or, indeed, anywhere else.
The foregoing paragraphs serve to illustrate the showing of the record upon which we conclude that the pertinent finding by the Supreme Court is without support in the proofs to the full extent to which that finding goes.
All of the named firms did work for many other job printers. They were specialists and were in no sense connected with the appellant or his business. The work was not done under appellant's supervision, or on his premises, or in the presence of himself or any of his employees or representatives, or where his work was performed. Appellant had no control over the workmen. He does not know how much time it took to do his particular work or what the employees were paid. Such parts of his payments as were allocated by the Commission to labor and thus made the basis of assessment are admittedly the result of estimates or guesses made to or by the Commission's investigator and do not represent accurate calculation. The principle relied upon by respondent is that the assessments are prima facie
correct and that the burden of proving them wrong is upon the appellant. That contention, legally sound, nevertheless emphasizes the difficulty which the appellant would have in ascertaining precisely *Page 619 
that which the Commission, with its skilled investigators and wide powers, did not succeed in getting.
The sums involved are, for the most part, insignificant as additions to the fund into which they go when compared with the minute details required in the ascertainment, calculation and recording thereof. The subject has already been touched. It may be further stated thus: There were eight firms which did work for appellant and his predecessor corporation between July 1st, 1938, and October 1st, 1942, a period of four years and three months. The computation of the tax for that period as to all of those firms was $229.90, including interest thereon, figured presumably at the statutory rate of one per centum per month, to June 11th, 1943. The calculations are computed upon units of three months each — divisions of the calendar year. That total embraces the amounts payable by the worker (initially by the employer) as well as by the employer. The amounts chargeable against the employer (appellant) per quarterly period run from a minimum of 3c to a maximum of $3.52. The amounts chargeable against the workers, not individually but group by group as employed by the several contracting firms, per quarterly period run from a minimum of 1c to a maximum of $1.30. As we have endeavored to indicate, these figures are taken from the tables computed separately as to each so-called under contractor or subcontractor and the quarterlyminima and maxima are computed as to all the employees of that contractor as a group. If they are scaled down to monthly instead of three-monthly periods, or to a computation per worker instead of per group, or if they are broken down, as in actual practice they probably would be, to a calculation job by job, the resulting burden would be substantial. Further, the appellant is under the constant necessity of keeping informed, at his peril, of the actual number of workers (viz., whether eight or less than eight) employed in shops over which he has no control or supervision and with which his connection is really that of a customer or patron.
These facts forcibly present the question whether the legislature meant to place such a statistical load upon a small business man who undertakes to run a job printing shop and *Page 620 
has enough work to require the hiring of eight employees for whom he regularly reports and pays tax but has not the volume or character of work to justify the purchase of necessary machines or the employment of skilled craftsmen for such highly specialized labor as we have been considering and which occasionally must be done, not because it is a part of the job printer's trade, but because it is incidental to the completion of a job which a customer desires.
Technically, the appellant did, when he engaged an outside firm, contract with that firm. We must assume that there was in each instance at least an implied oral contract whereby the outside firm undertook to do a workmanlike job and the appellant undertook to make fair compensation for the same. But none of those outside firms was a contractor or a subcontractor in the sense of taking over, either by agreement or settled practice, a division of appellant's business. None was allied with appellant in the operation of the latter's business or any part of it. Each was conducting a business of his own, serving numerous patrons including appellant. The service thus rendered appellant was frequently so casual and so slight that, from the figures, it could not have taken more than a fraction of a worker's day. We are called upon to decide whether the legislature meant to include an instance like the present when it enacted that "whenever any employing unit contracts with or has under it any contractor or subcontractor for any employment which is part of its usual trade * * * or business * * * the employing unit * * * shall * * * be deemed to employ each individual in the employ of each such contractor or subcontractor for each day during which such individual is engaged in performing such employment."
In the endeavor to ascertain and apply the legislative intent we give weight to the provision of R.S. 43:21-19 (i) (6)supra, which plainly indicates that when an individual who is to be reimbursed for his services is free from control or direction, performs his services outside of all the places of business of the enterprise for which the service is performed, and is customarily engaged in an independently established business, he is not to be considered as in employment subject to the *Page 621 
statutory chapter. All of those conditions were met by the firms here involved and, so far as concerns the appellant, by every workman employed by those firms. From the statutory provision that employing units which employ less than eight men are not subject to assessment unless they assume certain relations with concerns employing that number or more we clearly have it that the legislature did not intend to bring all business enterprises within the purview of the statute. Obviously, it was the legislative policy to omit small concerns in so far as they did not, under statutory definition, come within the ambit of a larger business so as to become in effect a part thereof. If we assume that appellant will pursue his statutory remedy (R.S.
43:21-19(g)) and enforce recovery from the several employing units on whose behalf he is called upon to pay, the persons who ultimately will pay the disputed assessments are not parties to the action. We must consider the problem, not only as it affects the appellant, admittedly a statutory employer, but also as it affects numerous independent concerns, too small to be classed as statutory employers on the facts of their own organizations and not subject to direct assessment. It is as important to save to the exempt organizations the immunization given by the statute as it is to bring in all employing units which are legally liable.
Our cases which come nearest to the subject-matter are SingerSewing Machine Co. v. New Jersey Unemployment CompensationCommission, 128 N.J.L. 611; affirmed, 130 Id. 173, andRaines v. Unemployment Compensation Commission, 129 Id. 28;affirmed, Ibid. (at p. 387). The Singer Sewing Machine case was quite different. That company had set up a continuously operating mechanism to do permanently that which was essentially a part of its usual business, namely, the distribution and marketing of its products; the distributor dealt only in Singer products and his function was an integral part of Singer's business. The Raines case went further but not so far as the one now before us. Several points of distinction are that by the terms of that opinion the slightest superintendence in the building operation there involved would have disclosed the number of men employed and the prevailing rate of wage; the services of the subcontractor *Page 622 
were performed at the place where Raines, the statutory employer, performed his work; and the question of difficulty in obtaining knowledge was not raised below.
We have expressed our finding that at least some of the outside firms were not engaged in the same trade or business as was the appellant. This being so, there will need to be a reconsideration of the case, either by the Supreme Court, or by the Commission or by both tribunals, as to those firms. We have not microscopically examined the entire evidence to ascertain whether there may be proof to sustain the factual finding below in some instances, and this particularly for the reason that we conceive that the Commission approached the whole subject under a misconception of the law. The Commission seems to have followed, and to be here advocating, the broad theory that it may uniformly, without close attention to individual cases, assess a tax against any employer who admittedly has a taxpaying business, for every employee of a non-taxpaying under-contractor or subcontractor who participates in the completion of a job which an employer has accepted in its entirety from his customer and which the employer bills as a whole to that customer; and it appears to be here seeking a ruling thereon. Our answer to the proposition thus broadly stated is in the negative. We, therefore, consider it desirable that there should be a reappraisal of the entire assessment in view of the law so stated.
The judgment below will be reversed and the record remanded for disposition consistent with this opinion.
For affirmance — HEHER, COLIE, EASTWOOD, JJ. 3.
For reversal — THE CHANCELLOR, CHIEF JUSTICE, DONGES, BURLING, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ. 9. *Page 623