IN THE MATTER OF MBL HOLDING CORPORATION, NATIONAL BONDING & ACCIDENT INSURANCE CO., MARKSTON INTERNATIONAL, INC., MUBEN REALTY CORP., MUTUAL BENEFIT FINANCIAL SERVICE CO. CORP., MBL LIFE ASSURANCE CORP., APPELLANTS, v. STATE OF NEW JERSEY, DEPARTMENT OF LABOR, OFFICE OF THE COMMISSIONER, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 4, 1987—Decided March 4, 1987.

Before Judges FURMAN, DREIER and STERN.

*Doreen E. McManimon* and *Sidney Glaser* argued the cause on behalf of appellants (*Kraft & Hughes,* attorneys, *Doreen E. McManimon* on the brief).

*James P. Lidon,* Deputy Attorney General, argued the cause on behalf of respondent (*W. Cary Edwards,* Attorney General, attorney, *Michael R. Clancy,* Deputy Attorney General, of counsel; *James P. Lidon* on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

Petitioner corporations appeal from a determination of the Commissioner of Labor concluding that each was an "employer" within the meaning of the Unemployment Compensation Law, *N.J.S.A.* 43:21–1 *et seq.,* and therefore liable to contribute to the unemployment compensation fund for wages received by individuals assigned by Mutual Benefit Life Insurance Company (hereinafter MBL) to perform work for petitioners. Petitioners are all wholly owned subsidiaries of MBL and argue that the parent was the real employer and thus the only entity obligated to make the contributions.

The Division of Unemployment and Disability Insurance (hereinafter Division) filed liability assessments against each of the petitioners demanding payment of delinquent unemployment compensation contributions for 1983 and, in the cases of five of the petitioners, for some additional years as well. A hearing officer concluded that an employment relationship existed between the petitioners and the persons who earned the wages and therefore each petitioner was liable for the assessed contributions.

The director of the Division, in essence, adopted the decision of the hearing officer. The director concluded that "[t]he relationship of statutorily covered employment exists between each of the 6 corporate petitioners and the individuals in ques-

tion," that "[t]here is no statutory authority for adoption of the common paymaster concept to this State's Unemployment Compensation Law" and that "[e]ach corporate petitioner is separately liable for tax contributions based upon earnings attributed from each of them by the individuals in question." The Commissioner of Labor (Commissioner) thereafter adopted the opinion and decision of the director.

The central facts are undisputed.

MBL is a multi-line insurance carrier which, during the years in question, owned or controlled, directly or indirectly, all six petitioners. While all six petitioners engaged in business in New Jersey, all claimed to have no employees in New Jersey and only two had employees anywhere else. Pursuant to an agreement between MBL and each petitioner, MBL provided services to petitioners by hiring employees and assigning them from time to time to do work for one or more of the petitioners. For accounting purposes, MBL's employees were required to keep careful records of the time they spent working for each petitioner. The employees were paid by MBL, which in turn billed each petitioner for its share of the employee's salary and benefits. Each petitioner reimbursed MBL for the salary and benefits, and employees received their federal W-2 forms from MBL. At all times the power to hire and fire the employees resided in MBL. All employees performed their services for petitioners in MBL's home office.

Petitioners' principal argument is that the Commissioner erred in finding that a statutory employment relationship existed between each petitioner and the employees in question, such that each petitioner was liable for unemployment tax contributions based on wages paid to the employees. They insist that the only employment relationship was between the employees and the parent company, MBL, and that only MBL was liable for the contributions. It is undisputed that MBL has already

paid the tax attributable to the wages paid to all the employees if MBL is the "employer."[1]

An employer is required to contribute to the Unemployment Compensation Fund at a designated rate based on wages paid to "individuals in his employ." *N.J.S.A.* 43:21–7(a)(1). "Employer" is defined in several ways pursuant to *N.J.S.A.* 43:21–19(h). That section defines an "employer" to include

(1) Any employing unit which in either the current or the preceding calendar year paid remuneration for employment in the amount of $1,000.00 or more;

. . . . . . . .

(4) Any employing unit which together with one or more other employing units is owned or controlled (by legally enforceable means or otherwise), directly or indirectly by the same interests, or which owns or controls one or more other employing units (by legally enforceable means or otherwise), and which, if treated as a single unit with such other employing unit or interest, would be an employer under paragraph (1) of this subsection.... [*N.J.S.A.* 43:21–19(h)].

"Employing unit" is defined in pertinent part as

... any individual or type of organization, any partnership, association, trust, estate, joint-stock company, insurance company or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, or the legal representative of a deceased person, which has or subsequent to January 1, 1936, had in its employ one or more individuals performing services for it within this State. All individuals performing services within this State for any employing unit which maintains two or more separate establishments within this State *shall be deemed to be employed by a single employing unit for all the purposes of this chapter* (R.S. 43:21–1 et seq.). Each individual employed to perform or to assist in performing the work of any agent or employee of an employing unit *shall be deemed to be employed by such employing unit for all the purposes of this chapter* (R.S. 43:21–1 et seq.),

---

[1]The dispute results from the fact that if the tax is levied against the six petitioners, the fund will collect more money than it would collect if the tax is assessed against MBL alone. As the hearing officer noted in his findings of fact,

The consequence of the Division's position is that a greater overall Unemployment Compensation tax would be collected in consequence of application of individual tax assessments against each petitioner as to the earnings of each individual up to the maximum taxable wage base which in total would exceed the maximum taxable wage base if only a single employer were involved.

This fact is undisputed. *See N.J.S.A.* 43:21–7.

whether such individual was hired or paid directly by such employing unit or by such agent or employee; provided the employing unit had actual or constructive knowledge of the work. [*N.J.S.A.* 43:21–19(g) (emphasis added)].[2]

The real question is whether MBL or petitioners should be deemed the "employer" and, therefore, liable for contributions. The Department urges us to affirm its decision based on the substance of the corporate relationships. *Cf. Lazar v. Bd. of Review, Div. of Employ. Sec'y.*, 77 *N.J.Super.* 251, 259 (App. Div.1962) (indicating that courts should not hesitate "to pierce the corporate veil and determine the true factual situation"). *See also Provident Inst. for Sav. in Jersey City v. Div. of Employ. Sec.*, 32 *N.J.* 585, 591 (1960).

However, it is undisputed that the corporate relationships were developed to allow MBL to facilitate its business in this state.[3] Moreover, while we must give due deference to the fact finding of the agency, it is undisputed that MBL, not petitioners, directly hired the employees and paid them out of MBL funds. Petitioners' "reimbursement" of MBL was apparently more of an accounting technique than a real transfer of money. Petitioners exercised no real control over the employees; MBL exercised the control.

It is true that the employees performed their services for petitioners pursuant to MBL's "agreement" to provide services to petitioners. However, the employees were ultimately acting for MBL which was the entity contractually bound to supply services to petitioners. In any case, it cannot reasonably be said that the employees were in the "employ" of petitioners within the statutory meaning of "employing unit." *N.J.S.A.* 43:21–19(g). As that subsection provides, "All individuals performing services within this State for any employing unit which

---

[2]Employment is defined to include "service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied." *N.J.S.A.* 43:21–19(i)(1)(A).

[3]There is no suggestion in the record that MBL's approach was violative of Title 14A or any provision of Title 54.

maintains two or more separate establishments within this State shall be deemed to be employed by a single employing unit for all the purposes of this chapter."[4]  Here, MBL maintained petitioners as "separate establishments" and thus the employees should be deemed to be employed by MBL.

The third and last sentence of *N.J.S.A.* 43:21–19(g) reads,

Each individual employed to perform or to assist in performing the work of any agent or employee of an employing unit shall be deemed to be employed by such employing unit for all the purposes of this chapter (R.S. 43:21–1 et seq.), whether such individual was hired or paid directly by such employing unit or by such agent or employee; provided the employing unit had actual or constructive knowledge of the work.[5]

Petitioners were subsidiaries and not strictly agents or employees of MBL.  However, it is clear that the Legislature's intent was for the Commissioner to look to the ultimate corporate authority for contributions.  Thus, as employees charged with performing services for the employing unit's subsidiaries, the employees here should "be deemed to be employed by such employing unit." *Cf. Hillside Holding Corp. v. Div. of Emp. Security,* 33 *N.J.Super.* 432 (App.Div.1955).  As explained by the court in *Hillside,* the Unemployment Compensation Law was aimed at preventing a company from escaping liability for contributions by departmentalizing itself into separate corporations having fewer than the statutory minimum number of employees then required as a prerequisite for contributions. Here, in contrast, the parent actually paid the contributions, and the legislative policy designed to assure that contributions are paid has been clearly fulfilled. *See also Singer Sewing, etc., Co. v. N.J. Unemployment, etc.,* 128 *N.J.L.* 611 (Sup.Ct. 1942), aff'd o.b. 130 *N.J.L.* 173 (E. & A. 1943).

---

[4]We understand the words "single employing unit" as referring to the employing unit previously referred to and so interpret the provision in the absence of greater clarity.

[5]Despite various amendments to *N.J.S.A.* 43:21–1 *et seq.,* none affect any issue relating to the years in question on this appeal.

*Restaurant Publications v. Lubin,* 286 *App.Div.* 644, 146 *N.Y.S.*2d 104 (3rd Dept.1955) involved a similar issue under New York law. The appellants there were two subsidiaries of a parent corporation. The parent paid unemployment contributions on the wages of the employees of both the parent and subsidiaries. Each corporation was in the business of publishing magazines. The parent hired and fired all employees and paid their salaries and benefits. One subsidiary had no bank account, and the other had one "used for inter-company transfers only." The same employees did work for both subsidiaries and for the parent. "For cost accounting purposes alone, the overhead and salaries of employees are allocated on the books to each particular *publication* for the purpose of determining the financial returns produced by each publication." 146 *N.Y.S.*2d at 105 (emphasis in original).

The New York administrative agency held that the subsidiaries were required to make contributions, "apparently based solely upon appellants' allocation of the salaries for their own accounting purposes." *Id.* However, the Appellate Division rejected such a formalistic approach stating "Appellants cannot escape the fact that they are separate entities from the parent corporation, but that fact alone should not subject them to liability for contributions if they are not in a realistic sense employers paying wages within the letter and spirit of the Unemployment Insurance Law." *Id.* The court held that appellants were not the real employers:

> Although theoretically the employees were joint employees of all three corporations, in actual practice they were paid by one employer, carried on one payroll, and in fact, had but one employer. Whether that employer be considered Ahrens [the parent] or all of the entities knitted together in one unit, the fact that salaries were allocated to publications for accounting purposes seems little different than the customary practice of allocating overhead costs to various departments of one corporation. [Citation omitted].
>
> We think the record here conclusively establishes that in this organization "there is such singleness of operation, control, services and payment of wages that all of the units involved are to be treated singularly as 'an employer.'" [Citation omitted.] To hold otherwise would be inequitable and not in accord

with the purposes and spirit of the Unemployment Insurance Law, as outlined in Section 501 of the Labor Law. [*Id.* at 106]

The court concluded that to require additional contributions from each appellant "when in fact and in reality there is but one employer and one employment can only result in a disproportionate payment of contributions with no additional benefit to an employee." *Id.* Likewise, here the additional amount which would be collected from the six petitioners would not be matched by increased benefits to employees, and therefore to construe the act as petitioners contend would not impair its remedial purpose. *Cf. Gilchrist v. Division of Employment Security,* 48 *N.J.Super.* 147, 153 (App.Div.1957). In either event the employees are protected, and contributions were paid to assure that protection.

Notwithstanding the deference which we must give to agency fact finding and to its interpretation of statutes it is obligated to enforce, *see e.g., Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 327–328 (1984); *Schuenemann v. Board of Review,* 208 *N.J.Super.* 48, 51–52 (App.Div.1986),[6] we conclude that the issue before us basically involves an interpretation of the governing statute, particularly in the absence of a controlling regulation effective at the time contributions were due and payable. *See Mayflower Securities v. Bureau of Securities,* 64 *N.J.* 85, 93 (1973). We hold that the Commissioner misapplied the statute under the facts as developed in the record, and that his determination must therefore be reversed.[7]

---

[6]This is particularly true in light of the relationship between the Unemployment Compensation Law and the Federal Unemployment Tax Act, *see Schuenemann v. Board of Review, supra* at 51–52. However, we note that nothing in the record before us indicates that either the State of New Jersey or any employer will suffer disadvantages under the federal act by virtue of our holding herein.

[7]The Commissioner urges that *N.J.A.C.* 12:16–12.2, dealing with a "common paymaster," now requires adoption of his position. To the contrary, the absence of regulation at any time relevant to the payments involved in this case evidences the lack of any policy requiring separate payments. As the regula-

tions subsequently adopted were not in effect at any time relevant to this
matter, we do not pass upon their validity or any question relating to them.
See N.J.A.C. 12:16–12.1 et seq.