THE STATE and S. WATSON, Trustee, *v.* THE BANK OF TENNESSEE and others.

1. LIABILITY OF STATE TO BE SUED. A sovereign State is not liable to be sued in its own Courts without its own consent. The right to resort to Courts to redress grievances, as against the State, only exists where the Legislature has exercised its discretion in prescribing the manner and the Courts in which suits may be brought against the State. The legitimate tribunal for the enforcement of the right is the Legislature, unless the Legislature provides for its enforcement through the Courts.

Distinction between remedies to enforce liabilities or redress grievances, as against individuals or corporations, and the State, discussed and recognized.

Cases cited: Walker *v.* Whitehead, 16 Wall. 317.

2. SAME. *Obligation of contracts not impaired. When.* The remedy by suit against the State was not given in consequence of any constitutional injunction upon the Legislature to furnish such remedy, but purely as a matter of favor to the creditors of the State, thus giving them the choice of two remedies. §2807 of the Code, authorizing suits to be brought against the State, was not a contract between the State and her creditors, and the latter have no such vested rights under that Section as would have been impaired if it had been repealed after suit was commenced. Still less would this be so where suit was instituted after its repeal. Hence the Act of 1865, repealing this Section of the Code, was constitutional and valid. And though the remedy be less prompt and convenient than the old, or less speedy, the change of remedy will not for such reason be invalid.

Case cited: Cooley *v.* Con. Lim., 361; Bronson *v.* Kinzie, 1 How., 316; 12 Wheat, 270; 9 Peters, 359; Curtis *v.* Whitney, 13 Wall, 68; 13 How., 429; 5 Wall., 541; 7 Wall., 506; Burr *v.* Arkansas, 20 How., 529; Butler *v.* Pennsylvania, 10 How., 416.

Code cited: §2807.

Statute cited: Act of 1865.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court. McHENRY, Special Chancellor.

The State and S. Watson, Trustee, *v.* The Bank of Tennessee, *et als.*

PILLOW & HARRIS for the Railroad Company.

Attorney-General HEISKELL for the State.

NICHOLSON, C. J., delivered the opinion of the Court.

The original bill was filed by the State of Tennessee, and S. Watson, as trustee, in pursuance of an Act, passed on the 16th of February, 1866, for the purpose of winding up and settling the business of the Bank of Tennessee, under a deed of assignment by the President and Directors of the Bank, by which all the property, real and personal, and all the assets of the Bank were assigned to S. Watson, as trustee. On the 20th of November, 1872, upon petition, it was ordered by the Court that the Memphis & Charleston Railroad Company be allowed to file its cross-bill in this cause, as a creditor of the Bank of Tennessee, and to set up its claim, making the Bank and the State of Tennessee parties defendant, and that this cause be consolidated with the original cause. The complainant in this cross-bill alleges, that by law it was made the duty of the Railroad Company to pay over to the Bank of Tennessee, as the fiscal agent of the State, the accruing semi-annual interest on the bonds of the State, loaned by it to said railroad corporation to aid in the construction of its road; that on the 14th of October, 1863, the Company did, in pursuance of law, pay over to the Bank, as the agent of the State, and as interest accruing on the bonds loaned, as afore-

The State and S. Watson, Trustee, v. The Bank of Tennessee, et als.

said, the sum of $32,450, which was to pay the semi-annual interest due on the 1st of July, 1863, and that on the 21st of December, 1863, the Company paid to the Bank, for a like purpose $32,370, the interest due on the 1st of January, 1864, for which payments the Company took and holds the receipt of the Bank. It is further alleged that the Railroad Company, in December, 1863, and in February, 1864, deposited in the Bank about §130,000, for which the Company received and holds certificates of deposit.

These payments and deposits were made at Griffin, Georgia, where the Bank was then located; one of the receipts for payment not showing what kind of funds was paid, and the other showing that it was in currency; some of the deposits were made in Confederate Treasury notes, and the residue made without stating the character of funds. The Railroad Company charges that after the war the Comptroller of the Treasury of the State, refused to allow the Company any credit for the payments of interest made, as aforesaid, on the 14th of October, and the 21st of December, 1863, but demanded payment thereof a second time; and that under threats by the Governor of taking possession of the road under the law, the Company again paid the two instalments of interest, but under protest. It is also alleged that the State failed to furnish the Bank with the $5,000,000 of capital, provided for in the charter; that the State, by withdrawing the specie of the Bank in 1865, as it did, and by ordering the deed of assignment to be made, giving a pri-

ority of payment for $1,500,000 to common schools had violated the charter of the Bank, and the rights of complainants in the cross-bill; and that the State was responsible therefor to the Company for their deposits, and that the act ordering the assignment was a violation of the Constitution of the United States, and void, and that the assignment was void.

The cross-bill prays to recover back the interest so paid to the Bank, from the State, and asks a decree accordingly against the State and against the Bank.

It also asks for a decree for the amount of the deposits against the Bank, and against the State as the guarantor of the Bank, and to be indemnified against losses arising from a deficiency in the assets of the Bank, under the provisions of the charter.

The State, by her Attorney-General, appeared and assigned several causes of demurrer, as follows: 1. That the State is not subject to be sued. 2. That there is no subsisting law or regulation by which the State is subject to suit. 3. That the bill, as against the State, is an original bill, asserting claims wholly independent of the fund to be administered in the original suit.

On the 16th of June, 1874, the demurrer of the State was sustained by Special Chancellor McHenry, sitting in place of Chancellor Cooper, who was incompetent from having been of counsel in the original cause. From the decree dismissing the bill as to the

State, the Railroad Company has appealed. The questions raised in this case were presented upon the demurrer of the State to the cross-bill of McKennie, filed to the original bill in this cause. In that case this Court held that it was error to allow a cross-bill to be filed as to matters not properly involved in or connected with the subject matter of the original bill; and as the State was a party to the original bill, for no other purpose than for the settlement of the business of the Bank, and the distribution of its assets among its creditors, the cross-bill seeking to make the State responsible for failure to comply with obligations assumed in reference to the amount of capital of the Bank, and in reference to losses that might arise from a deficiency in its capital, the cross-bill could not be maintained. It was held, also, that the §2807 of the Code, which authorized suits to be brought against the State, was repealed by the Act of 1865, Ch. 36; and, therefore, that upon the dismissal of the original cause by the State in December, 1872, she then ceased to be a party, and of course no relief whatever could be granted against her. It is true, it was not deemed necessary in determining the questions then raised, to discuss in the opinion of the Court the question now relied on in the argument—that is, whether the guaranties or pledges of faith by the State, contained in the Bank charter, and the Act authorizing suits against the State, were so incorporated with the contracts made by the depositors with the Bank as to become parts thereof, and in that way

The State and S. Watson, Trustee, *v.* The Bank of Tennessee, *et als.*

to become protected from legislative interference by a repeal of the Act authorizing suits against the State. The opinion assumed, without discussing the question, that the repeal of §2807 being valid, no such liability had attached to the State which prevented her from dismissing her suit, and thereby avoiding any decree in the case. But as this question has been again presented and argued with much ability and earnestness, we deem it proper to re-examine it as presented by the facts of the present case.

In the case of *Walker* v. *Whitehead*, 16 Wall., 317, Mr. Justice Swayne stated the following propositions to be "axioms in our jurisprudence": ·

"The laws which exist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it. This embraces alike those which affect its validity, construction, discharge and enforcement.

"Nothing is more material to the obligation of a contract than the means of its enforcement. The ideas of validity and remedy are inseparable, and both are parts of the obligation which is guaranteed by the Constitution against impairment.

"The obligation of a contract 'is the law which binds the parties to perform their agreement.'

"Any impairment of the obligation of a contract— the degree of impairment is immaterial—is within the prohibition of the Constitution.

"The States may change the remedy, provided no substantial right secured by the contract is impaired.

The State and S. Watson, Trustee, *v.* The Bank of Tennessee, *et als.*

Whenever such a result is produced by the act in question, to that extent it is void. The States are no more permitted to impair the efficacy of a contract in this way than to attack its vitality in any other manner. Against all assaults coming from that quarter, whatever guise they may assume, the contract is shielded by the Constitution. It must be left with the same force and effect, including the substantial means of enforcement, which existed when it was made. The guarantee of the Constitution gives it protection to that extent."

It is insisted for the Railroad Company that the Act of the Legislature of 1865, by which §2807 of the Code was repealed, impaired the obligation of the contracts assumed to have been made in 1863 and 1864 by the State with the Company, and that upon the principles just laid down, the repealing Act is so far void, as it affects the right of the Company to sue the State for refusal to comply with the contracts. For the purposes of this opinion it may be assumed that the alleged contracts existed between the State and the Railroad Company, and, consequently, that the right to sue the State in the manner prescribed by the Code existed. But still the question is, was the right granted by the State to sue itself, such a vested right as could not be withdrawn by the State without impairing the obligation of the contract?

In the several cases from which the principles before stated were deduced, the questions involved the enquiry, whether the obligation of contracts between

26—vol. 3.

individuals, or individuals and corporations, were impaired by the passage, by Legislatures of States, of laws either repealing or altering remedies in existence for the enforcement of the contracts at the time they were entered into. In none of these cases was the question presented whether, after a State has given its consent to be sued in its own Courts upon its contracts, it could withdraw that consent without impairing the obligation of contracts entered into before its consent was withdrawn. It thus appears that the present case presents an important feature which distinguishes it from those cases in which the principles referred to have been adopted and applied. It is uniformly held that a sovereign State is not liable to be sued in its own Courts without its own consent. The general principle is that when States enter into contracts, the liabilities so incurred can only be enforced by petition or memorial to the legislative department, whose legitimate business it is to provide the means and to make the necessary appropriations to meet the liabilities of the State. This remedy is secured by a constitutional guaranty in our State, and during much the greater portion of our existence as a State it has been the only remedy for enforcing its liabilities. In reference to liabilities incurred, as between individuals, or between individuals and corporations, all of our Constitutions have provided for their redress or enforcement through the agency of the judicial department. And in each of our three Constitutions this distinction between the remedies to en-

The State and S. Watson, Trustee, *v.* The Bank of Tennessee, *et als.*

force liabilities or redress grievances, as against individuals or corporations and the State, has been recognized. Hence, it is provided, that "every man, for an injury done him in his lands, goods, person and reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay; and to this end it is provided, "that all Courts shall be open." So far the language of the provision is imperative, but as to contracts or liabilities of the State, the language is: "Suits may be brought against the State in such manner and in such Courts as the Legislature may by law direct." Art. I, Sec. 17, Constitution of Tennessee. By this provision every man has a right to resort to the Courts for the redress of all grievances as against individuals or corporations; and for this purpose it is required that the Courts shall be open, but the right to resort to the Courts to redress grievances as against the State only exists where the Legislature has exercised its discretion in prescribing the manner and the Courts in which suits may be brought against the State. The right which an individual or a corporation has to enforce a liability as against the State, is as much a vested right as that which he has against another individual or corporation; but in the latter case the right can be enforced only through the Courts: whereas, as to the former, the legitimate tribunal for the enforcement of the right is the Legislature, unless the Legislature provides for its enforcement through the Courts. After the Legislature has made such provi-

sion, the party having cause of complaint against the State has his right either through the Courts or by appeal to the Legislature. But while the right to sue is a vested right, which cannot be taken away without impairing the obligation of the contract, yet there is no vested right in a particular remedy which may be in existence at the time of the contract This is the general rule, and the exceptions are those peculiar cases in which the remedy is part of the right itself. "As a general rule," says Mr. Cooly, (Const. Lim., p. 361,) "every State has complete control over the remedies which it shall afford to suitors in its Courts. It may abolish one class of courts and create another. It may give a new and additional remedy for a right already in existence. And it may abolish old remedies and substitute new. If a Statute providing a remedy is repealed while proceedings are pending, the proceedings will thereby be determined, unless the Legislature shall otherwise provide; and if it be amended instead of repealed, the judgment pronounced in such proceedings must be according to the law as it then stands; and any rule or regulation in regard to the remedy, which does not, under pretence of modifying or repealing it, take away or impair the right itself, cannot be regarded as beyond the province of legislation." See cases cited in notes. "Whatever belongs merely to the remedy may be altered according to the will of the. State, provided the alteration does not impair the obligation of the contract." *Bronson* v. *Kinzie*, 1 How., 316. And it does not impair it, provided it leaves the

The State and S. Watson, Trustee, *v.* The Bank of Tennessee, *et als.*

parties a substantial remedy, according to the course of justice as it existed at the time the contract was made. And though the remedy be less prompt and convenient than the old, or less speedy, the change of remedy will not for such reason be invalid. 12 Wheat, 270; 9 Peters, 359. In *Curtis* v. *Whitney*. 13 Wall., 68, it was decided "that a Statute does not necessarily impair the obligation of a contract because it may affect it retrospectively, or because it enhances the difficulty of performance of one party or diminishes the value of the performance to the other, provided that it leaves the obligation of performance in full force."

It follows, from these authorities, that if the Railroad Company had a valid claim against the State. by reason of their transactions with the Bank of Tennessee in 1863 or 1864, (as to which we decide nothing) and if they had the right, under §2807 of the Code, to enforce their claims in the Courts, they had that right subject to the power of the Legislature to make any change in the remedy for its enforcement, which still left them a substantial remedy. Upon the same principles on which their remedy by suit in the Courts entered into and became part of their contract with the State, the right of the State to alter the remedy entered into, and became part thereof, subject, however, to the condition that they would still have a substantial remedy for the enforcement of their claim. If the only remedy of the Company for the enforcement of their claim against the State was that furnished by §2807 of the Code,

then the repeal of that Section in 1865, without providing another remedy, would be such an impairment of the obligation of the contract, as to render the act of repeal invalid, as against the rights of the Company. But we have seen that the ¡Railroad Company not only had the remedy furnished by §2807. of the Code, but in addition, the usual and long recognized legitimate remedy, by legislative action. When the remedy by suit in Court was repealed, the remedy by application to the Legislature was left in full force. The remedy by suit in Court was not given to the Company in consequence of any constitutional injunction upon the Legislature to furnish such remedy, but purely as a matter of favor to · the creditors of the State, thus giving them the choice of two remedies; whereas, none but the remedy by suit was given to other creditors, as against other debtors than the State. During most of the existence of the State, the remedy by application to the Legislature was the only remedy given to the creditors of the State, and we are bound to presume, that it had proved sufficient and effective during more than fifty years of the history of the State. The State was under no obligation to her creditors, to furnish them the remedy by suit, nor under any, to continue that remedy longer than the Legislature should deem it sound policy to withdraw it, and leave her creditors to the remedy by application to the Legislature. The Railroad Company dealt with · the Bank of Tennessee, with full knowledge that the remedy by suit was given as a matter of favor,

and could be withdrawn by the Legislature at any time; they cannot, therefore, complain, as they still have an effectual remedy, by application to the Legislature. They have still less ground for complaint, as they failed to avail themselves of the remedy by suit until after the Legislature had withdrawn the consent of the State to be sued in the Courts.

We have been considering the case upon the assumption that the Section of the Code authorizing suits to be brought against the State, constituted a contract between the State and the Railroad Company, and we have reached the conclusion, that, even upon that assumption, the repeal of that Section was no such impairment of the obligation of the contract as furnished ground of complaint to the Company. But it was not necessary to consider the question in that aspect. The Section of the Code referred to, was no contract; it was no more than an Act to regulate the proceedings and define the jurisdiction of the Courts of the State, where the State is a party defendant. In the case of *Butler* v. *Pennsylvania*, 10 Howard, 416, Justice Daniel, in referring to the Section of the United States Constitution inhibiting the passage of laws by States, impairing the obligation of contracts, uses this language: "The contracts designed to be protected by §10 of the Federal Constitution, are contracts by which perfect rights, certain, definite, fixed, private rights of property are vested. These are certainly distinguishable from the measures or engagements adopted or undertaken by the body politic, or State

government for the benefit of all, and from the necessity of the case, and according to universal understanding, to be varied or discontinued, as the public good shall require." It was said by Chief Justice Taney, in *Burr* v. *Arkansas*, 20 How., 529, that " it is an established principle of jurisprudence in all civilized nations, that the sovereign cannot be sued in its own Courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a. defendant in a suit by individuals, or by another State. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may appear that justice to the public requires it." These remarks were made in reference to the facts of the case of *Burr* v. *Arkansas*, which were, that suit had been brought against the State of Arkansas on certain bonds issued by her. It was brought in pursuance of an Act of Assembly authorizing such suits, passed in obedience to a provision of her Constitution, which declares, that " the General Assembly shall direct by law, in what Courts, and in what manner, suits may be brought against the State." While the suit was pending, the Legislature passed an Act directing, that, upon certain terms not being complied with, the Court should dismiss the suit. Chief Justice Taney says, in special reference to these facts, that, " if the Act di-

recting the dismissal of the suit had been passed before the suit was commenced, no objection would have been made to it." "The objection," he says, "is, that it was passed after this suit had commenced, and contained regulations with which the plaintiff could not conveniently comply. But the prior law (that authorizing suits against the State) was not a contract, it was an ordinary Act of the Legislature prescribing the conditions upon which the State consented to waive the privilege of sovereignty. It contained no stipulation that these regulations should not be modified afterwards, if, upon examination, it was found that further provisions were necessary to protect the public interest; and no such contract can be implied from the law, nor can this Court inquire whether the law operated harshly or unjustly upon the parties whose suits were then pending. That was a question for the Legislature. They might have repealed the prior law altogether, and put an end to the jurisdiction of their Courts in suits against the State, if they had thought proper to do so," etc.

It follows that the Railroad Company has no such vested rights under §2807 of the Code, as would have been impaired if that Section had been repealed after the Company commenced its suit, much less as its suit was instituted after the repeal. It follows, also, that after the repealing Act of 1865, the Courts of the State had no jurisdiction to render any decree in the case except that of dismissal; 13 How., 429 ; 5 Wall, 541 ; 7 Wall, 506. The result is, that the decree of the Special Chancellor is correct, and is affirmed with costs.