## Girard Trust Company et al. v. The Pennsylvania Railroad Company et al.

*Knox Henderson, Boyd Lee Spahr, Ballard, Spahr, Andrews & Ingersoll*, for plaintiffs.

*Charles Myers*, for defendants.

SMITH, P. J., April 6, 1950.—These proceedings come before the court on preliminary objections to plaintiffs' bill of complaint to quiet title to real estate which plaintiffs have brought pursuant to the Act of May 23, 1949, P. L. 1692, asking in each case that plain-

tiff's complaint be dismissed because the act of assembly is void as being in conflict with the Constitution of the United States and the Constitution of this Commonwealth.

The case of The Pennsylvania Company for Banking and Trusts, Trustee Under the Will of Elon Dunbar, Deceased, v. The Philadelphia, Baltimore and Washington Railroad Company, C. P. No. 2, December term, 1949, no. 2341, was transferred to this court with the approval of Court of Common Pleas No. 2 and the litigants in this case.

Complainants in each instance filed complaints to quiet title. The preliminary objections in each case were filed thereto in the following manner: The court has no jurisdiction because jurisdiction is based on the Act of May 23, 1949, P. L. 1692; that this act is invalid and void in that it is in conflict with the Constitution of Pennsylvania and the Constitution of the United States. Argument briefs have been filed by each of the litigants, the Attorney General of the Commonwealth of Pennsylvania and by the Corporate Fiduciaries Association of Philadelphia, as amicus curiæ.

In action no. 1, brought by the Girard Trust Company, trustee under mortgage of the Pennsylvania Railroad Company, dated July 1, 1873, recorded in the office for recording of deeds, etc., in and for the County of Philadelphia, in Deed Book F. T. W., no. 70, page 363, etc., against the Pennsylvania Railroad Company, it is averred that plaintiff is the sole trustee under the mortgage; that pursuant to the terms thereof, the railroad company issued bonds in the principal amount of $49,000,000, dated February 1, 1915, payable August 1, 1960, with interest thereon payable semiannually at the rate of 4½ percent per annum, which are now outstanding in the hands of the public; that all of the interest due on these bonds has been paid and no default exists in the terms thereof; that in the

mortgage dated July 1, 1873, no due date is recited therein and more than 50 years have elapsed since the date of the mortgage.

In the cause of action no. 2, brought by the Pennsylvania Company for Banking and Trusts, Trustee Under the Will of Elon Dunbar, deceased, against the Philadelphia, Baltimore and Washington Railroad Company, it is averred that by indenture dated June 2, 1853, Eliza Howard Burd et al., executors of the last will and testament of Edward Shippen Burd, deceased, conveyed premises located at the Southwest corner of Thirty-first and Chestnut Streets, to the West Chester and Philadelphia Railroad Company, reserving thereout and therefrom an annual ground rent of $1,590.76 per annum, payable in half-yearly payments on the first day of January and July of each and every year forever, which indenture was recorded in the office for the recording of deeds for the County of Philadelphia on June 27, 1853, in Deed Book T. H. no. 97, page 61, etc.; that by the terms of the indenture, it was provided that, if the grantee therein named or its successsors or assigns, did at any time within 10 years from the date thereof pay or cause to be paid to grantors, their heirs or assigns, the sum of $26,512.50 and the arrearages of the yearly ground rent to the time of such payment, then the same should forever thereafter cease and be extinguished; that neither grantee nor its successors or assigns did within the 10-year period from the date of the indenture pay the sum to grantors, their heirs or assigns, with the result that the ground rent so reserved from and after 10 years from the date of the indenture became and is irredeemable; that plaintiff is the present owner and holder of the ground rent reserved in the indenture; that the present owner of the ground out of which the irredeemable ground rent issues is defendant, the Philadelphia, Baltimore and Washington Railroad Company, defendant being

the successor by merger to the West Chester and Philadelphia Railroad Company; that defendant is the present owner of the premises and successor by merger to the original covenantor of the ground rent, and is the only party liable to plaintiff for the payment of the ground rent; that all semiannual payments of the yearly ground rent which have become due and payable have been paid by defendant or its predecessor, and no action or proceeding has heretofore been instituted for the payment or collection of the ground rent; that more than 50 years have elapsed since the date of the creation of the ground rent and since the date on which it became irredeemable.

The bills of complaint as filed come within the provisions of the Act of May 23, 1949, P. L. 1692. The sole question involved is as to the jurisdiction of this court. If the Act of 1949, supra, impairs the obligation of a contract within the meaning of the Constitution of the United States or the Constitution of Pennsylvania, this court has no jurisdiction in this matter. On the other hand, if the act is constitutional, this court has jurisdiction over this matter.

Section 1 of the Act of May 23, 1949, P. L. 1692, provides:

"In order to quiet title to and to facilitate alienation, conveyance, transfer and sale of real estate in all cases in which under any deed, mortgage, ground rent, or decree of any court of common pleas of this Commonwealth, any money has been or may hereafter be charged against land, payable presently or at a future time, and the period of 50 years has elapsed, including minority and disability, or shall have elapsed after the principal of such encumbrance or charge has become or shall have become due and payable, and where no due date is recited in such instrument then 50 years after the date of creation or date of such instrument, and no action or proceeding shall have been in-

stituted for the payment or collection of such charge, mortgage, ground rent, or decree, as provided by law, within said period of 50 years, on account of such charge, mortgage, ground rent, or decree against the owner or owners of the land encumbered or charged therewith, there shall be a conclusive presumption of payment, release, or satisfaction thereof, and no such charge, mortgage, ground rent, or decree shall be effective or enforceable against any owner of real estate so encumbered or charged unless within one year of the effective date of this act a proceeding to enforce payment of or to preserve, revive or continue such encumbrance or charge shall be instituted against the present owners of real estate encumbered or charged therewith, as hereinafter provided."

The act as written is confusing. It makes its enforcement incapable of rational interpretation. It attempts to cover those cases where a mortgage, ground rent, etc., is charged against land, and the period of 50 years has elapsed after the principal has become due or shall become due and payable; and where no due date is recited in the instrument, then 50 years after the date of creation or the date of the instrument —and no action has been instituted for the collection of such mortgage or ground rent, etc., *as provided by law* within the period of 50 years against the owner of the land encumbered—then there shall be a conclusive presumption of payment. It seems apparent that if the principal has become due and payable, some due date must be contained in the instrument. That statement standing alone confuses the other statement where it is stated, "and no due date is recited in such instrument". It seems to us that these statements which apparently contradict each other, would be bound to cause perplexities to exist in the minds of good conveyancers. Again, where it is stated, "then 50 years after the date of creation or date of such in-

strument, and no action shall have been instituted as provided by law, within 50 years", etc., it seems to us that in those mortgages and ground rents, etc., which are over 50 years of age, and where the interest has been fully paid thereon, that this sentence is meaningless because no action could have been brought by law for the payment or enforcement of such mortgage or ground rent, etc., without default of the mortgage payment of interest or rent. The law seems to be well settled that a mortgagee cannot recover possession of mortgaged premises before some condition in the mortgage is broken or where it appears under the terms of the mortgage that the mortgagor should hold possession until a breach occurred. In Soper et al. v. Guernsey, 71 Pa. 219, Mr. Justice Sharswood made this statement years ago and it is still the law. The mortgage of the Pennsylvania Railroad Company dated July 1, 1873, was given pursuant to express statutory authority, to wit, the Act of February 18, 1873, P. L. 129, which is quoted in the mortgage, being exhibit A in the plaintiff's statement of claim. This act of assembly authorizes the railroad company to issue, from time to time, bonds, and to secure, from time to time, these bonds by one or more mortgages of the whole or any portion of the railroad company's property, real and personal, and corporate rights and franchises acquired, and to be acquired.

Section 2 of the Act of 1873, supra, provides that any mortgage executed and delivered as authorized thereby, shall be recorded in Philadelphia County, and shall thereupon be a lien on the property mortgaged wherever situated. This mortgage was duly recorded in Philadelphia County and thus became a lien on the property situated in Pensylvania. Exhibit A of plaintiff's statement of claim shows that the mortgage was recorded also in the Counties of Hudson, Essex, Middlesex, Mercer, Burlington, Camden, Somerset and Union, in the State of New Jersey.

The mortgage itself recites the resolution that the railroad company execute and deliver to three individuals and their successors as mortgagees, in trust, a mortgage of the property mentioned therein, "which mortgage shall be, and is hereby declared to be, a continuing lien, to secure the full and final payment of one hundred thousand bonds to be issued as the amount of the fullpaid outstanding capital stock may justify; that is to say, as well the one hundred thousand bonds to be first issued, as those which may be made and issued from time to time after the payment of the whole or any portion thereof, or of any subsequent issue, but never to exceed, however, at any time, one hundred thousand bonds outstanding. . . ."

The mortgage provides that the railroad company, for securing the payment of the bonds which it was then authorized to issue, as well as those which may be issued from time to time when additional capital stock shall be outstanding, granted and conveyed to the three individuals therein named and their successors, the property therein described, in trust, for the use, benefit and security of the several persons and bodies corporate who shall be or become the holders of these bonds, as well as those first to be issued as those which may be made and issued from time to time after the payment of the whole or any portion thereof, or of any subsequent issue not exceeding the limit of 100,000 bonds.

The mortgage further provides that if the railroad company shall make default in payments due on the bonds, as therein specified, the trustees, upon the written request of the holders of one fourth in amount of the outstanding bonds, may enter upon and take possession of the mortgaged premises, and operate, manage, and control and use the same to the best advantage, or sell the mortgaged premises at public sale and distribute the proceeds among the bondholders. At the

end of the default clause the following language appears:

". . . It being further distinctly understood and agreed (any law or usage to the contrary notwithstanding), that neither the parties of the second part hereto nor their successors or successor in the trust, nor the holder or holders of the bonds intended to be hereby secured, or any of them, shall sell the premises hereby mortgaged, or intended so to be, or any part thereof, under proceedings, either at law or in equity, otherwise than in the manner herein provided for the recovery of the whole or any portion of the principal or interest of the said bonds; it being the intention and agreement of the parties hereto, as well for the better protection of the holders of the bonds hereby secured against changes of the law in respect to the remedies for the collection of debts, as for the securing of the largest possible price for the mortgaged premises, in the event of a sale of the same or any portion thereof, that the mode of sale hereinbefore provided shall be exclusive of all others."

It would, therefore, appear that since this mortgage was given to secure bonds to be issued from time to time in the future, a due date in the mortgage would have been out of place. A reading of the mortgage shows that the parties made a definite agreement as to the remedies available to the mortgagees in the event of default. The act in question, to wit, Act of May 23, 1949, P. L. 1692, provides that as to any mortgage containing no due date which is more than 50 years old, such as this mortgage is, "there shall be a conclusive presumption of payment, release, or satisfaction thereof, and no such . . . mortgage . . . shall be effective or enforceable against any owner of real estate so encumbered or charged", unless, within one year of the effective date of the act, a proceeding to preserve or continue such encumbrance shall be instituted. It

seems clear to us that this act would prohibit the mortgagee from availing himself of the remedies which were agreed upon in the mortgage itself in the event of default, unless within a specified time a proceeding to continue the mortgage charge shall be instituted. It seems to us that this modification in the remedies is not reasonable but is so arbitrary and unreasonable as to make it an unconstitutional act.

Plaintiff, under the Act of July 12, 1705, 21 PS §791 et seq., possesses no right to bring an action to foreclose this mortgage since it is evident that no default has occurred. The right to foreclose a mortgage is purely statutory, and it has been held that this act must be strictly construed: Federal Land Bank of Baltimore v. King, 294 Pa. 86. In Galey v. Guffey, 248 Pa. 523, Stewart, J., stated:

" '. . . whilst the legislature may not impair the obligation, they may modify the remedy. But, it sometimes happens that the parties contract concerning the remedy—that they stipulate in the body of the contract, that in case of failure of payment by a certain day, there shall be no stay of execution, or that the mortgagees may enter and sell the mortgaged estate—or that all exemption rights shall be waived. In such cases the rule is that the remedy becomes part of the obligation of the contract, and any subsequent statute which affects the remedy impairs the obligation, and is unconstitutional. . . . If the parties adjust or modify, the legal remedies for themselves by making them an express and substantive part of their contract, they cannot, as to that particular contract, be changed by the legislature.' "

In the case of Beaver Co. B. & L. v. Winowich, 323 Pa. 483, 492, Mr. Justice Stern stated:

"Any law which enlarges, abridges, or in any manner changes the intention of the parties as evidenced by their contract, imposing conditions not expressed therein or dispensing with the performance of those

which are a part of it, impairs its obligation, whether the law affects the validity, construction, duration, or enforcement of the contract: Story's Commentaries on the Constitution, Book 3, ch. 34, sec. 1379."

On page 493 the learned justice also states:

"The amount of impairment of the substantive obligation of a contract is immaterial. Any deviation from its terms, however slight, falls within the meaning of the constitution: Greene v. Biddle, 8 Wheat. 1, 84; Ogden v. Saunders, 12 Wheat. 213, 256; Walker v. Whitehead, 16 Wall. 314, 318.

" 'One of the tests that a contract has been impaired is that its value has by legislation been diminished. It is not, by the constitution, to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligations, dispensing with any part of its force.' "

It will be noted that the Act of May 23, 1949, P. L. 1692, limits and restricts the mortgagee's remedies by providing that they shall only be available if a proceeding to continue the lien of the mortgage shall be instituted prior to September 1, 1950. It seems to us that this legislation clearly impairs the obligation of the contract entered into by the parties by requiring a court proceeding in order to preserve the remedies stipulated in the contract, although the contract itself contains no such requirements.

The remedies established by the ground rent, which existed by law at the time when the deed was given, were also a contract of the parties. The principle applicable to such a situation is set forth in Edwards v. Kearzey, 96 U. S. 595, 607, where it is stated:

"The remedy subsisting in a State when and where a contract is made and is to be performed is a part of its obligation, and any subsequent law of the State which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the Constitution, and is, therefore, void."

It appears to us that the Act of May 23, 1949, P. L. 1692, impairs and lessens the value of the ground rent contract by requiring costly court proceedings in order to continue its validity, and extinguishing the right if such proceedings are not instituted within a limited time, even though there is no default in the performance of its obligations and no dispute as to its validity. Again, since all of the semiannual payments on the ground rent which have become due and payable have been paid, the owner of the ground rent possesses no right under the existing law to institute any proceeding to establish a right which in fact he does not possess. The Act of 1949 says that an action must be brought to institute proceedings provided under existing law. It is manifest that there is no existing law for such proceedings where there is no default in the ground rent. Any reasonable interpretation of this provision shows that the act is impossible of rational interpretation and thus cannot stand. With a great many mortgages and ground rents held by corporations, banks and trust companies, with thousands of investors and bondholders scattered all over the world, where the interest and rents constitute a vital part of their investments, especially where they have been constantly and currently paid, it is difficult to see how this provision in the Act of May 23, 1949, P. L. 1692, is reasonable and proper. The effect of the Act of 1949 creates a serious innovation in the property law of this country. It would compel the foreclosure of mortgages not in default and it would seriously affect the property rights of those who had invested in these securities. It would also necessitate the refinancing of these companies and would impose costs and expenses upon those where the investments themselves yield but a small annual income. It would also destroy whatever rights were possessed by those who have bonds outside of the United States and in foreign countries. The evils which it

purports to correct would be greatly overbalanced by the injury to the property rights of many companies and individuals. It would result in the impairment of liens in violation of article III, sec. 7, of the Constitution of Pennsylvania. No principle is more firmly entrenched in the law than that the laws which were in effect at the time a contract was made enter into its obligation and become an integral part of it. When an act of assembly is passed which affects not the remedy but affects the title where no rights have accrued that can be enforced, it is time to call a halt upon the enforcement of such a statute. Any act of assembly which operates retrospectively to take what is by existing law, the property of one man and without his consent, transfers it to another, with or without compensation, is in violation of that clause in the Bill of Rights, Constitution, article I, sec. 9, which declares that no man can be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land.

Thus the obligations, and the remedies provided in the mortgage and the ground rent, are protected by the State constitutions and cannot be impaired by subsequent legislative enactment. The Act of May 23, 1949, P. L. 1692, goes far beyond the Act of April 27, 1855, P. L. 369. The court there held that that act was constitutional since it merely deprived the owner of the remedy for the collection of his ground rent after the expiration of 21 years from any payment, suit, claim or demand for the same. The Act of 1949 provides that there shall be a conclusive presumption of payment, release or satisfaction thereof, and no such charge, mortgage, ground rent or decree shall be effective or enforcible. It will, therefore, be seen that this not only affects the remedy, but it affects the ground rent estate as well as the obligation of the mortgage contract even though they are current in all respects.

One of the most irreconcilable parts of this act of assembly is that it creates litigation by requiring parties to institute an action where no controversy exists.

As to presumption of payment, it is one thing to apply this presumption to a delinquent charge. It is quite a different thing to apply it to a perpetual mortgage or an irredeemable ground rent which is not in default and on which no action for payment can be brought as long as the current payments are being made. This act was a subsequent rule of law declaring property rights invalid after the 50-year period. As such, it is an unconstitutional deprivation of property and an impairment of the liens and obligations of contracts. It cannot be justified since it applies whether or not payment of principal is due, and whether or not current payments are being made.

This act requires a judicial determination in an adversary proceeding where there is no controversy. Suits must be instituted to preserve irredeemable ground rents and open end mortgages where no defaults have occurred, where no cause of action has arisen and where all parties are in agreement concerning, and admit the existence and validity of, the charge or obligation. This the legislature has no right to require.

The Act of May 23, 1949, P. L. 1692, contains a severability clause in accordance with the provisions of the Act of May 28, 1937, P. L. 1019, article IV, sec. 55. In the Act of May 23, 1949, P. L. 1692, however, the different parts are so mutually dependent upon and connected with each other as to warrant a belief that the legislature intended them as a whole, and that if part were invalid, the legislature would not have passed the remaining portions, then the dependent and connected portions will also be rejected, in spite of a severability clause.

The act of assembly is invalid as to perpetual mortgages and irredeemable ground rents created before its passage without due date and now more than 50 years old, and serves no purpose. It would only tend to confuse and make titles uncertain. For this reason we declare the Act of May 23, 1949, P. L. 1692, designated as Act No. 512, invalid and void as unconstitutional.

### Order

And now, to wit, April 6, 1950, the court sustains the preliminary objections filed by defendants in the case of Girard Trust Company, Trustee Under Mortgage of The Pennsylvania Railroad Company, dated July 1, 1873, v. The Pennsylvania Railroad Company and in the case of The Pennsylvania Company for Banking and Trusts, Trustee Under the Will of Elon Dunbar, Deceased, v. The Philadelphia, Baltimore and Washington Railroad Company.